PEOPLE v FRANCE

PEOPLE v PANNELL

Docket Nos. 84104, 84324. Argued January 9, 1990 (Calendar Nos. 5-6). Decided September 12, 1990.

LaNathan France was convicted by a jury in the Bay Circuit Court, William J. Caprathe, J., of armed robbery and of breaking and entering an occupied dwelling with intent to commit larceny. The Court of Appeals, MacKenzie and R. P. Hathaway, JJ., (Beasley, P.J., concurring), reversed in an unpublished opinion per curiam, on the ground that comments were made by a bailiff to the jury during deliberations outside the courtroom and the presence of counsel regarding requests by the jury for certain information (Docket No. 89986). The people appeal.

Earl L. Pannell was convicted by a jury in Detroit Recorder's Court, George W. Crockett, III, J., of five counts of third-degree criminal sexual conduct. The Court of Appeals, Sullivan, P.J., and Cynar and R. J. Taylor, JJ., affirmed in an opinion per curiam, finding that the judge's written note to the jury, without consulting with counsel, to continue deliberations was not error (Docket No. 92623). The defendant appeals.

In an opinion by Chief Justice Riley, joined by Justices Brickley, Boyle, and Griffin, the Supreme Court held:

Before a reviewing court can determine whether an ex parte communication to a deliberating jury resulted in any reasonable possibility of prejudice to the defendant, it must categorize the communication as either substantive, administrative, or housekeeping.

1. Substantive communication encompasses supplemental instruction on the law given by a trial court to a deliberating jury. A substantive communication carries a presumption of prejudice in favor of the aggrieved party, regardless of whether

REFERENCES

Am Jur 2d, Trial §§ 1000, 1001.

Postretirememt out-of-court communications between jurors and trial judge as grounds for new trial or reversal in criminal case. 43 ALR4th 410.

an objection is raised. The presumption may be rebutted only by a firm and definite showing of an absence of prejudice.

2. Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations and have no presumption of prejudice. Failure to object when made aware of such a communication is evidence that the instruction was not prejudicial. If an objection is raised, the burden lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect. Alternatively, a reviewing court, upon its own volition, may find that an instruction which encouraged a jury to continue its deliberations was prejudicial to the defendant because it violated the ABA Standard Jury Instruction 5.4(b), adopted in *People v Sullivan,* 392 Mich 324 (1974).

3. Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. Such a communication carries the presumption of no prejudice. To rebut the presumption, there first must be an objection to the communication and then the aggrieved party must make a firm and definite showing of prejudice.

4. The instructions in each of these cases fall into the category of administrative communication, except the typewritten definition of second-degree criminal sexual conduct which was a substantive communication. With regard to the administrative communications in each case, defense counsel waived objection when made aware of the instructions. With regard to the substantive communication in *Pannell,* the prosecution effectively overcame the presumption of prejudice to the defendant. Furthermore, the note written by the trial court was in conformance with the *Sullivan* rule and was included in the record. The record evidence indicates that neither defendant has suffered any reasonable possibility of prejudice as a result of the communications.

*France,* reversed and remanded.

*Pannell,* affirmed.

Justice LEVIN, joined by Justices CAVANAGH and ARCHER, dissenting, stated that decisions of the Supreme Court and the Michigan Court Rules absolutely proscribe communication by a judge or a court officer with a jury without notice to the parties in the courtroom and in their presence. A conviction should not necessarily be reversed, however, because communications with a deliberating jury occurred outside the courtroom and the

presence of counsel, where the terms of the communication were stenographically transcribed in the courtroom or the communication was had by means of a note that was preserved as part of the record, and it appears from the writing, assessed in context, that there was not any reasonable possibility of prejudice to the complaining party. The line drawn by the Supreme Court in previous cases requiring reversal without a showing of prejudice where the judge enters the jury room after the jury begins to deliberate or where the judge responds to a jury request for further information respecting the subject matter of its deliberations orally through a court officer should be adhered to.

The majority has proposed a tripartite classification for appellate review of ex parte communications by the court or a court officer with a deliberating jury: substantive, administrative, and housekeeping. Where the communication is oral and is not stenographically transcribed, or where it is not had by a note or by another writing that is preserved as part of the record, the appellate court generally will not have an adequate record on which to base such a classification. The classification scheme begs what is the central question in most cases, namely, whether the communication was respecting the subject matter of the jury's deliberations and whether it was of a sort that could pose any reasonable possibility of prejudice. Clearly, once it is established that a communication, whether oral or written, was of a housekeeping nature, it would be extraordinary for there to be any reasonable possibility of prejudice. Also, statements about the unavailability of certain pieces of evidence will not ordinarily pose any reasonable possibility of prejudice. If a substantive or administrative communication is stenographically or otherwise recorded, there will be nothing further to show; it will be for the appellate court to determine whether there was any reasonable possibility of prejudice. Where there is not a stenographic or other contemporaneous written record, the prosecutor will not be able to show, and an appellate court generally will be unable to determine, whether the communication is administrative or substantive and may even have difficulty determining whether an oral communication is housekeeping. However, where there is a contemporaneous written record, the appellate court generally will be able to make an assessment, without regard to who has the burden of persuasion, of whether there was any reasonable possibility of prejudice, even though the rule against ex parte communication with a deliberating jury was violated.

The decisions in both cases should be affirmed, resulting in an affirmance of the defendant's conviction in *Pannell* and a

reversal of the conviction and remand for a new trial in *France.*

170 Mich App 768; 429 NW2d 233 (1988) affirmed.

JURY — EX PARTE COMMUNICATION.

> Before a reviewing court can determine whether an ex parte communication to a deliberating jury resulted in any reasonable possibility of prejudice to the defendant, it must categorize the communication as either substantive, administrative, or housekeeping; substantive communication encompasses supplemental instruction on the law given by a trial court to a deliberating jury and carries a presumption of prejudice in favor of the aggrieved party, regardless of whether an objection is raised; the presumption may be rebutted only by a firm and definite showing of an absence of prejudice; administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations and have no presumption of prejudice; housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided and carry the presumption of no prejudice to the defendant (MCR 6.414[A]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people in *France.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Joseph A. Puleo,* Assistant Prosecuting Attorney, for the people in *Pannell.*

State Appellate Defender (by *F. Michael Schuck*) for the defendant in *France.*

State Appellate Defender (by *Derrick A. Carter*) for the defendant in *Pannell.*

RILEY, C.J. We granted leave to appeal in these two cases, consolidated for purposes of this appeal, to review the strict rule requiring reversal of a conviction in the event of communication with a deliberating jury outside the courtroom and the presence of counsel.[1]

Communication with a deliberating jury is prohibited by MCR 6.414(A).[2] Any communication with a jury not in conformance with the court rules has been, and continues to be, discouraged by this Court. However, the realities of trial practice lead us to the determination that the harsh rule of automatic reversal goes beyond the limits necessary to safeguard the right of a defendant to a fair trial. Therefore, today we modify the rule of automatic reversal.[3]

The linchpin of the new rule centers on a showing of prejudice. For purposes of this rule, we broadly define prejudice as "any reasonable possibility of prejudice."

We find that communication with a deliberating jury can be classified into one of three categories:

[1] See *Zaitzeff v Raschke,* 387 Mich 577; 198 NW2d 309 (1972), and *People v Cain,* 409 Mich 858; 294 NW2d 692 (1980) (peremptory order adopting the dissent of Justice CAVANAGH in *People v Cain,* 94 Mich App 644, 647-648; 288 NW2d 465 [1980]).

[2] MCR 6.414(A) provides:

> Court's Responsibility. The trial court must control the proceedings during trial, limit the evidence and arguments to relevant and proper matters, and take appropriate steps to ensure that the jurors will not be exposed to information or influences that might affect their ability to render an impartial verdict on the evidence presented in court. The court may not communicate with the jury or any juror pertaining to the case without notifying the parties and permitting them to be present. The court must ensure that all communications pertaining to the case between the court and the jury or any juror are made a part of the record.

[3] The rule that we adopt today will apply to both criminal and civil cases.

substantive, administrative, or housekeeping. Upon appeal, it is incumbent upon a reviewing court to first categorize the communication that is the basis of the appeal. This will necessarily lead to the determination of whether a party has demonstrated that the communication was prejudicial, or that the communication lacked any reasonable prejudicial effect.[4]

Substantive communication encompasses supplemental instructions on the law given by the trial court to a deliberating jury. A substantive communication carries a *presumption* of prejudice in favor of the aggrieved party regardless of whether an objection is raised. The presumption may only be rebutted by a firm and definite showing of an *absence* of prejudice.

Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication carries no presumption. The failure to object when made aware of the communication will be taken as evidence that the administrative instruction was not prejudicial. Upon an objection, the burden of persuasion lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect. Alternatively, a reviewing court, upon its own volition, may find that an instruction which encourages a jury to continue its deliberations was prejudicial to the defendant because it violated the ABA Standard Jury In-

---

[4] The following three paragraphs provide examples of what may constitute substantive, administrative, or housekeeping communications. The examples included within each category are not intended to be an exclusive list of the communications that may be included within each category. We leave the classification of communications not enumerated in this opinion to be decided as they arise in future cases.

struction 5.4(b),[5] as adopted by this Court in *People v Sullivan*, 392 Mich 324; 220 NW2d 441 (1974).

Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. A housekeeping communication carries the presumption of no prejudice. First, there must be an objection to the communication, and then the aggrieved party must make a firm and definite showing which effectively rebuts the presumption of no prejudice.

We conclude that the instructions in each of the cases at bar fall into the category of administrative communication, except the typewritten definition of second-degree criminal sexual conduct which was a substantive communication. With regard to the administrative communications in each case, the defense counsel waived objection when made aware of the instructions. With regard to the substantive communication in *Pannell*, the prosecution effectively overcame the presumption of prejudice to the defendant. Furthermore, the note written by the trial court was in conformance with the *Sullivan* rule and included in the record. We find that the record evidence indicates that neither defendant has suffered "any reasonable possibility of prejudice" as a result of the communications.

Accordingly, we reverse the decision of the Court of Appeals in *France* and affirm the decision of the Court of Appeals in *Pannell*.

---

[5] The current version of this jury instruction is found in 3 ABA Standards for Criminal Justice (2d ed), Standard 15-4.4(b).

## I. FACTS AND PROCEEDINGS

### A. PEOPLE v FRANCE

At the conclusion of a September, 1985, jury trial, LaNathan France was convicted of armed robbery[6] and of breaking and entering an occupied dwelling with intent to commit larceny.[7] The jury acquitted him of second-degree criminal sexual conduct.[8] He was sentenced to serve a term of from twenty to forty years in prison for armed robbery, and a concurrent term of from ten to fifteen years in prison for breaking and entering.

Moments after the jury left the courtroom to begin its deliberations, the trial court asked defense counsel, "[a]ny objection, if [the jurors] ask for the exhibits, just to send them into them by way of the bailiff . . . ?" Defense counsel said he did not object.

While the jury was deliberating, the trial court several times indicated that there had been contact between the bailiff and the jury. On each occasion, defense counsel stated that he had no objection.

The first of these conversations began when the trial court explained that the jury had sent out a note asking for a diagram of the victim's house, as well as the exhibits that had been produced by the prosecution. The trial court stated, "I instructed [the bailiff] to tell [the jurors] that the diagram on the board wasn't made an exhibit, thus it's not one of the exhibits that can be brought to them. Their response was okay." The trial court then stated that the other exhibits had been given to them. Defense counsel responded: "[n]o objection to the

[6] MCL 750.529; MSA 28.797.
[7] MCL 750.110; MSA 28.305.
[8] MCL 750.520c(1)(c); MSA 28.788(3)(1)(c).

handling [of] the diagram in the manner in which you did, your Honor."

Later in the day, the trial court stated that it had received a note from the jury asking for a further definition of criminal sexual conduct. The trial court reported that it had given the jury a written instruction in a form that was approved by the defense counsel. Defense counsel stated on the record that the recitation of the trial court was correct.[9]

Finally, the trial court said that the jury had requested a police report. He told counsel that "the response to [the jurors] was that [the police report] was marked but was not received in evidence; and, therefore, we were not able to give them that." Defense counsel's response was the same: "[n]o objection to that, your Honor."

In the Court of Appeals, France presented many claims of error. Believing one had merit, the Court of Appeals declined to discuss the others.

The Court of Appeals followed the strict rule prohibiting communication with a deliberating jury outside the courtroom and the presence of counsel, *People v Cain,* 409 Mich 858; 294 NW2d 692 (1980), and reversed the conviction of the defendant.[10] The Court based its decision solely on the doctrine of stare decisis.[11] Judge BEASLEY signed the unanimous opinion and added a separate concurrence in which he urged this Court to "revisit and reverse" the automatic reversal rule

[9] The Court of Appeals held that there was no error regarding the typewritten definition of criminal sexual conduct that was given to the jury, citing *People v Anderson,* 418 Mich 31; 340 NW2d 634 (1983).

[10] The reversal was based solely on the comments made by the bailiff to the jury.

[11] "Although we have some concern for this automatic reversal rule, stare decisis requires our adherence and reversal in the instant case." *People v France,* unpublished opinion per curiam of the Court of Appeals, decided August 18, 1988 (Docket No. 89986).

stated in *Zaitzeff v Raschke,* 387 Mich 577; 198 NW2d 309 (1972).

The prosecution sought leave to appeal, which we granted on June 30, 1989.[12]

### B. PEOPLE v PANNELL

Earl L. Pannell went to trial in November, 1985, on eight counts of first-degree criminal sexual conduct.[13] At the conclusion, a jury found him not guilty of three of the eight counts. With regard to the remaining five counts, Pannell was convicted of the lesser offense of third-degree criminal sexual conduct.[14] He was sentenced to five concurrent terms of from ten to fifteen years in prison.

The jury was instructed near the end of the day on November 12, 1985. The next morning, the jury began deliberating, and, at 10:30 A.M., it asked the court for "[p]ictures, police report, [and the victim's] statement." In the absence of defense counsel, the judge directed the bailiff to give the jury the photographs that were admitted into evidence. However, the court waited to respond to the request for the police report and the victim's statement until defense counsel appeared at 12:20 P.M. At this time, the matters were placed on the record. Both parties agreed that neither the police report nor the victim's statement should be sent to the jury because the items were not admitted into evidence. Furthermore, defense counsel had no objections to the jury receiving the photographs. The jury was excused that afternoon at 4:30 P.M. without reaching a verdict.

The following morning, November 14, 1985, at 10:38 A.M., the jury sent a note to the judge which

---

[12] 432 Mich 920 (1989).

[13] MCL 750.520b(1)(f); MSA 28.788(2)(1)(f).

[14] MCL 750.520d(1)(b); MSA 28.788(4)(1)(b).

read, "we can not reach an agreement." Without consulting counsel, the judge immediately replied with a note which read, "[c]ontinue your deliberations . . . ." At 12:12 P.M. that afternoon, the jury sent out a second note which stated, "[m]ay we see the hammers?" Again, without consulting counsel, the judge directed the bailiff to give the jury the hammers that were entered into evidence as exhibits.[15] When the attorneys returned to the courtroom at 12:20 P.M. the same afternoon, the judge summarized the above occurrences for the record.[16] Here again, there was no objection to the judge sending the jury the exhibits that were entered into evidence, in this instance the hammers.

However, defense counsel wanted to place on the record an objection to the jury request of the previous day. The objection was that the testimony of a police officer regarding the victim's statement should have been reread to the jury.[17] During the objection, the jury returned with its verdict at 12:25 P.M.

---

[15] During trial, defense counsel objected to the admissibility of the hammers because they were not the actual hammers used in the perpetration of the crime, merely similar to those actually used. This objection was overruled and the hammers were admitted into evidence.

[16]  Thursday, November 14, 1985—12:20 P.M.

(Proceedings reconvened; out of the presence of jury)

*The Court:* Mr. Belcoure, Ms. Donahue, we have received some communications from the jury during the day. At or about 10:38 the jury wrote a note which says, We can not reach an agreement. About 10:38, the Court wrote a note to the jury saying, Continue your deliberations, with my initials on it, with the instruction that that be shown to the jury and retrieved so that it could be put in the Court file, which was done.

At 12:12 the jury wrote a note which says, May we see the hammers? Thank you. I instructed the bailiff to give the jurors Exhibits 10 and 10-A or 10-B, rather. Strike that. 10, 10-A, and 10-B, which are the hammers.

[17] This was the same testimony that, on the previous day, defense counsel agreed should not be given to the jury.

The Court of Appeals affirmed the convictions of the defendant. *People v Pannell,* 170 Mich App 768; 429 NW2d 233 (1988). In doing so, the Court found no error requiring reversal since the note sent to the jury was consistent with the ABA Standard Jury Instruction 5.4(b),[18] adopted by this Court in *People v Sullivan, supra.* Additionally, the *Pannell* Court took the opportunity to express its concern about the automatic reversal rule:

> We also state that we, like a growing number of our fellow appellate judges, disagree with the strict rule requiring reversal set forth in *People v Cain* [94 Mich App 644, 648; 288 NW2d 465 (1980)]. Like Judge SAWYER in his concurrence in *People v Lyons* [164 Mich App 307, 311; 416 NW2d 422 (1987)], we do not believe that contact with a deliberating jury can never be harmless error. We join Judge SAWYER in urging the Supreme Court to review this issue. [*Id.* at 771.]

The defendant sought leave to appeal, which we granted on June 30, 1989.[19]

## II. ANALYSIS

### A

It has been clear for well over a hundred years that contact with a deliberating jury must be carefully limited. *People v Knapp,* 42 Mich 267, 269-272; 3 NW 927 (1879); *Churchill v Alpena Circuit Judge,* 56 Mich 536; 23 NW 211 (1885).[20]

---

[18] Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, Standard 5.4, Length of deliberations, deadlocked jury.

[19] 432 Mich 920 (1989).

[20] Over the years, variations of this issue continued to appear in this Court. See, for instance, *People v Mullane,* 256 Mich 54, 59-60; 239 NW 282 (1931), *People v Chambers,* 279 Mich 73, 79-81; 271 NW

In recent years, this Court has been asked to address the issue on numerous occasions. In *Wilson v Hartley,* 365 Mich 188, 190; 112 NW2d 567 (1961), a bailiff and a clerk entered the jury room on the second day of deliberations and delivered an oral message from the judge. The Court said that it did not "condone such improper method of handling a jury trial," but affirmed the conviction on the ground that there was no prejudice to the plaintiff (against whom the jury returned its verdict). In *Wilson,* pp 189-190, we emphasized the importance of conforming to the correct procedure:

> Trial judges have a responsibility to communicate to the jury directly in open court and in the presence of, or after notice to, the parties or their counsel. The secrecy of the deliberations of the jury is a responsibility of the trial judge. The question of communications, either oral or written, from third parties to the jurors in the jury room has been the subject of several appeals to this Court in the last year. This indicates the importance of calling to the attention of the entire trial bench their duty to preserve the secrecy of the jury deliberations.

A few months later, the Court ordered a new trial in a case in which the trial judge had directed the sheriff to give oral instructions to a deliberating jury. *People v Kangas,* 366 Mich 201; 113 NW2d 865 (1962). Citing *Knapp* and *Churchill,* the Court ordered the new trial without separately discussing the question whether there was any prejudice in that particular case. The Court also cautioned trial judges to be sure that they and others avoid improper contact with deliberating juries:

556 (1937), *People v Pizzino,* 313 Mich 97, 107-108; 20 NW2d 824 (1945), and *People v Nick,* 360 Mich 219; 103 NW2d 435 (1960).

We call to the attention of the trial judges of this State their duty to safeguard trial by jury from any suspicion the jury may be tampered with while deliberating. Frequently of late this Court has had similar incidents called to its attention by appeal in which there is reason to believe the opportunity for jury tampering was present.

\* \* \*

[W]e . . . caution trial judges that bailiffs, sheriffs, and other court personnel should be warned about practices involving associations with jurors both in and out of the courtroom which might create the opportunity to influence their decisions. [*Kangas, supra* at 208.]

In *Salvatore v Harper Woods,* 372 Mich 14, 19-21; 124 NW2d 780 (1963), the trial judge returned a deliberating jury to the courtroom and spoke to the jury in the absence of counsel. The Court said that the trial court should not proceed in this fashion "unless *undue* delay of the jury's deliberations would result or unless counsel have agreed by stipulation on the record to permit such further instruction in their absence." *Id.* at 21. The Court affirmed the judgment of the trial court, however, observing that the proceedings in *Salvatore* had occurred in open court and had been recorded.

After wrestling with three more cases involving contact between a deliberating jury and outsiders,[21] the Court decided *Zaitzeff v Raschke, supra.* In that case, a deliberating jury passed out a note asking that certain testimony be reread. The judge brought the jurors back to the courtroom, where

[21] *Bunda v Hardwick,* 376 Mich 640, 665-668, 673-674; 138 NW2d 305 (1965), *DeCorte v New York Central R Co,* 377 Mich 317, 331-332, 333-357, 363; 140 NW2d 479 (1966), and *People v Schram,* 378 Mich 145, 150-154, 157-166; 142 NW2d 662 (1966).

he discussed their request.[22] A short time later, the judge and the court reporter entered the jury room, where the court reporter read to the jury the requested testimony. This Court reversed the trial court's judgment in *Zaitzeff,* adopting Justice Black's view that it is virtually impossible for a defeated party to demonstrate prejudice as a result of an improper visit to a deliberating jury. This Court strongly emphasized its intention to stop the practice of making improper contact:

> With what was written so plainly in 1961 for *Wilson v Hartley,* 365 Mich 188, concerning the indefensible practice of entering the jury room while the jurors are there, no matter by whom done, one would think that this Court had said enough to prevent what took place here. Yet the practice seems to go on, and on, and on, encouraged occasionally by "no prejudice shown" conclusions of a group of Justices who cannot hope to know what was said, or done, or gestured, or hinted, in the sanctity of the jury room. [*Id.* at 579.]

Later in 1972, this Court reversed a first-degree murder conviction where the trial judge, without obtaining the permission of the attorneys, had entered the jury room to deliver twenty-one exhibits. *People v Heard,* 388 Mich 182, 183-184; 200 NW2d 73 (1972). Neither the attorneys nor the jury had asked the judge to do this, and defense counsel objected when the judge returned to the courtroom.

In *People v Cain, supra,* this Court reinstated an order granting a defendant a new trial. A deliberating jury had passed out a note asking whether

---

[22] The attorneys had, for some reason, chosen to waive being present when the jury returned its verdict. Apparently the attorneys were also absent when the jury returned to the courtroom to discuss its request for a rereading of the testimony.

its verdict had to be unanimous. The judge read the note and told the bailiff to tell the jurors that their verdict had to be unanimous. Because of this error, the trial court granted the defendant a new trial, which the Court of Appeals set aside. This Court reinstated the trial court's order for a new trial, since the bailiff's oral statement to the jury "was in the nature of an instruction, off the record and without counsel, in (at the perimeter of) the jury room, and while the jury was deliberating." 94 Mich App 648.

The Court's most recent opinion in this area is *People v Anderson,* 418 Mich 31; 340 NW2d 634 (1983). In *Anderson:*

> The judge concluded his instructions with the statement that he would, before the jury commenced deliberations, discuss with the lawyers the instructions he had just given. If there were no additional instructions, he would then "personally come to your jury room and advise you that there will be no more instructions," whereupon "any verbal communication between us shall cease." After determining that there would be no further instructions, the judge announced that he would, with the consent of both counsel, advise the jury to commence deliberations, and apparently did so. [*Id.* at 45.]

The Court of Appeals reversed Anderson's conviction on a different ground, and this Court reinstated the conviction, finding that the ex parte communication with the jury was not error which required reversal because the trial judge had expressed his intention to communicate with the jury in that fashion and neither party had objected, even though each had been put on notice of the judge's intention to proceed. Nevertheless, the Court once again cautioned that such contact was improper:

There is simply no showing of prejudice in this case . . . . This view should not be taken in any way as approval of the practice employed in this case. It was an unwise and potentially prejudicial procedure. The better, simpler, and wiser practice would require the trial judge to communicate with the jury only from the bench in the courtroom and on the record. While experience suggests that that may sometimes be a cumbersome and time-consuming procedure, it is a price worth paying to preserve the integrity of the factfinding process, the appearance of jury independence, and the avoidance of the expense, delay, and consumption of judicial resources involved in appellate evaluation of jury room contact between the court and the jurors. [*Id.* at 40-41.]

This issue has also been presented on numerous occasions to the Court of Appeals. Two recent decisions are noteworthy. In *People v Kent,* 157 Mich App 780, 789-792; 404 NW2d 668 (1987), the Court of Appeals reversed the defendant's convictions because of errors in evidentiary rulings, and went on to address the defendant's contention that error which required reversal took place when a court clerk took meal orders from the jury during its deliberations. Defense counsel and defendant were informed after the fact and neither objected. The Court identified the meal order as a "purely housekeeping matter," *id.* at 791, and concluded that the communication was not improper. Before leaving the issue, the *Kent* Court strongly criticized the automatic reversal rule and urged a greater flexibility in the manner with which this Court treats the issue.[23]

---

[23] We believe the exact language of *Kent, supra* at 791-792, bears repeating in light of our decision today:

Broad rules of law designed to address especially egregious situations on occasion become petrified without additional

In *People v Lyons,* 164 Mich App 307, 309; 416
NW2d 422 (1987), lv den 430 Mich 861 (1988), a
deliberating jury sent out a note that read, " '[t]he
jury cannot reach a decision. What does the judge
suggest?' " Without consulting either party, the
judge told the bailiff to tell the jury to " 'keep on
working.' " The bailiff delivered the oral message.
The Court of Appeals reversed the defendant's
conviction, saying that "[i]n Michigan there is a
strict rule prohibiting communication with a delib-
erating jury outside of the courtroom and the
presence of counsel." The Court of Appeals relied
principally upon *Cain.*

Again, a member of the panel, Judge SAWYER,
issued a separate concurrence in which he urged
this Court to reëxamine the automatic reversal
rule. *Lyons, supra* at 311-313. While noting that
an "invasion into the jury room must be looked
upon with great concern," Judge SAWYER contin-
ued on, stating, "I cannot agree with the proposi-
tion that such an invasion can never be considered

analysis over periods of time. It makes little sense to have a
rule so absolute that the potential result is reversal of an
otherwise errorless trial because of an insignificant contact
with a jury which does not even raise the concern of those who
were present during the proceedings. Those who promulgate
such rules would do well to consider the consequences of
reversal of convictions where, despite clear instructions to the
contrary, a juror suddenly appears at a secretary's desk and
makes a request for water or to call a babysitter, or a juror
knocks at the door and verbally requests certain exhibits, or a
note is sent to a judge indicating how the voting stands. Is a
court officer, when taking a jury to a meal, prohibited from
verbally indicating the spending limits?

Little enough confidence exists today in our institutions
without further perpetuating its erosion by an automatic rule
applied to court personnel who are under oath to obey the law
where nothing more is revealed than an incidental contact
unrelated to the case itself. The judicial system must demon-
strate some confidence in those who are entrusted with its well-
being and, in fact, have little interest in the outcome of a
matter, when there is no showing of prejudice (or, after scru-
tiny, even a hint of such).

harmless." *Id.* at 311. Additionally, Judge SAWYER raised the policy concern of requiring the victim of the crime to "be put through another trial in futile reverence to a rule which serves no useful purpose." *Id.* at 313.[24]

It is readily apparent that an increasing number of Court of Appeals jurists, while remaining loyal to the doctrine of stare decisis, have found considerable disfavor with the rule of automatic reversal in the event of ex parte communication with a deliberating jury.

## B

A review of federal cases that address the issue of ex parte communications with a deliberating jury indicate that the nature of the communication can be classified as either substantive or administrative. Substantive ex parte communication occurs when the trial court provides the jury with supplemental instructions on matters of law. Administrative ex parte communication includes instructions regarding the availability of certain pieces of evidence, and an instruction which encourages the jury to continue its deliberations.

One of the earliest cases involving the issue of

---

[24] The full excerpt from which this quotation is taken, reads:

> I find it regrettable that the citizens' tax dollars must be wasted on giving a defendant another trial when he has received a fair trial the first time. I find it unconscionable that the victim must be put through another trial in futile reverence to a rule which serves no useful purpose. It is little wonder that victims may be reluctant to come forward when our justice system places upon them the burdens of following such absurd rules. As Judge HARRISON pointed out, such results as we are compelled to reach today only serve to deepen the erosion of public confidence in our judiciary. Therefore, while I am constrained to vote for reversal, I urge the Supreme Court to reverse us and restore some common sense to the system.

substantive ex parte communication is *Fillippon v Albion Vein Slate Co,* 250 US 76; 39 S Ct 435; 63 L Ed 853 (1919), where an employee brought a personal injury action against his employer for work-related injuries. In *Fillippon,* the jury was instructed on applicable Pennsylvania law and had retired for deliberations when it sent a written inquiry to the court asking whether the plaintiff should be found to have been contributorily negligent. The court responded with a written supplemental explanation of the law of contributory negligence.

The United States Supreme Court found that the supplemental instruction given to the jury was not in accord with Pennsylvania law, and that it was "calculated to mislead the jury in that it excluded a material element that needed to be considered in determining whether plaintiff should be held guilty of contributory negligence . . . ." *Id.* at 82. The Court said that "the trial court erred in giving a supplementary instruction to the jury in the absence of the parties and without affording them an opportunity either to be present or to make timely objection to the instruction." *Id.* at 81. Although the Court provided no remedy for the error of ex parte communication, it held that erroneous instructions in jury trials are presumptively injurious and furnish grounds for reversal unless it affirmatively appears that they were harmless. The *Fillippon* rule was then extended to criminal cases in *Shields v United States,* 273 US 583; 47 S Ct 478; 71 L Ed 787 (1927).

One of the leading cases regarding unauthorized communications with a jury is *Remmer v United States,* 347 US 227; 74 S Ct 450; 98 L Ed 654 (1954).[25] The Supreme Court held:

---

[25] *Remmer* involved an unnamed person that had remarked to a

In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. *The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. [Id.* at 229. Emphasis added.][26]

One manner in which the prosecution can meet its burden of establishing that the instruction was harmless to the defendant is illustrated in *United States v York,* 830 F2d 885, 894 (CA 8, 1987). The jury posed the question, " '[c]an we find York guilty on Count II even though he may not have carried a gun?' " The court responded with, " '[i]n answer to your question I refer you to pages 31-33 of my instructions.' " The court held that the presumption of prejudice was overcome because, "[t]he court's ex parte communication did nothing more than direct the jury to the neutral correct explanation of the law . . . ." *Id.* at 895. See also *Black v Stephens,* 662 F2d 181 (CA 3, 1981) (In response to a jury's note requesting a definition of excessive force, the trial court merely recited the

juror during trial that he could profit by bringing in a verdict favorable to the defendant. Notwithstanding this distinction, we believe that the nature of this type of ex parte jury contact must be classified as substantive and that the Supreme Court's treatment of the communication is relevant to our analysis here.

26 In *United States v Pennell,* 737 F2d 521 (CA 6, 1984), cert den 469 US 1158 (1985), the court held that the Supreme Court's subsequent opinion in *Smith v Phillips,* 455 US 209; 102 S Ct 940; 71 L Ed 2d 78 (1982), reinterpreted *Remmer* so as to shift the burden of showing prejudice to the defendant. However, no other federal appellate court has departed from the *Remmer* standard for evaluating the effect of an improper contact. *United States v Butler,* 262 US App DC 129, 133, n 2; 822 F2d 1191 (1987).

original instruction to which there was no objection. The court held that the recitation of the original charge was not improper.).[27]

Ex parte administrative instructions are not generally held to be error requiring reversal unless it can be shown that there was a prejudicial effect upon a jury. Occasionally, a jury will request certain documents or information that may or may not have been admitted into evidence. When these requests occur, the trial court will ordinarily advise the jury regarding the availability of the information requested, or, if the subject matter of the request has been admitted into evidence, the court will comply with the request and send in the exhibits.

As amply illustrated above, case law has determined that it is error for the court to instruct or communicate with the jury in the absence of counsel and without notice to the defendant and counsel. In *United States v Reynolds,* 489 F2d 4, 8 (CA 6, 1973), the court held that the test for determining if a forbidden communication constituted error requiring reversal was whether " 'there is any reasonable possibility of prejudice.' "[28]

In *United States v Mesteth,* 528 F2d 333 (CA 8, 1976), the jury sent two written requests to the judge. The first asked for the testimony of a witness to be read, and the second was an inquiry regarding whether the defendant was right- or left-handed. The judge responded by writing "no"

---

[27] In *Gleeson v Wood,* 321 F Supp 118 (ED Pa, 1970), the court held that the failure to make a timely objection to a substantive ex parte instruction requested by the jury resulted in a waiver of the objection and precluded the assertion of it at a later time.

[28] The foreman asked the bailiff if the jury could have the height of the defendant. The bailiff relayed the question to the judge's secretary who in turn repeated it to the judge. The judge used the same communication system in reverse to tell the jury that it could not have any additional information. The court held that the communication did not create a reasonable possibility of prejudice.

and his signature on the bottom of each note. The court applied the *Reynolds* test to find that the communications were not "of an affirmative or substantive nature," and held that "there was no reasonable possibility of prejudice, and the error, if any, was harmless." *Mesteth* at 335.

Included within the category of administrative communication is an instruction which encourages a jury to continue its deliberations. In *General Motors Corp v Walden,* 406 F2d 606 (CA 10, 1969), after the jury had deliberated for some time, it sent a note to the court which read, " 'Your honor, we are sitting five to one, and apparently cannot get closer. We do not know what to do. Will you please instruct us?' " *Id.* at 609. Without consulting counsel the court responded, " '[t]he Court has received your note and advises that you are to continue to deliberate.' " *Id.* Within an hour the court informed counsel of the note and its response. However, the court did not divulge how the jury was divided. Neither counsel objected, moved for a mistrial, or requested further instructions. The court found that the statement by the trial court was "an administrative direction to the jury" and went on to hold, "the communication was both harmless to the parties and collateral to the issues submitted for determination by the jury." *Id.* at 610.

Again, in *Reazin v Blue Cross & Blue Shield of Kansas, Inc,* 663 F Supp 1360 (D Kan, 1987),[29] citing *Acree v Minolta Corp,* 748 F2d 1382, 1385 (CA 10, 1984), the court said that the response of a trial court to a jury request for evidence or to *a question whether a jury should proceed* is an administrative direction. In *Acree,* the court held, "[n]otwithstanding this general [*Fillippon*] rule, it is not error if the instructions given to the jury

---

[29] Aff'd 899 F2d 951 (CA 10, 1990).

are merely administrative directions rather than supplementary instructions." *Id.* at 1385.[30]

C

We are persuaded by our analysis of the preceding cases that the Michigan rule of automatic reversal does not serve the best interests of justice and, in many instances, it may very well serve to defeat justice. The Michigan rule was borne of the frustration of this Court with the failure of our state trial courts to cease the practice of entering the jury room while the jury is deliberating. Notwithstanding our decision today, the message bears repeating: ex parte communication with a deliberating jury is error under MCR 6.414(A); it has been, and continues to be discouraged by this Court.

However, as observed by the United States Supreme Court in *Rushen v Spain,* 464 US 114, 118-119; 104 S Ct 453; 78 L Ed 2d 267 (1983), reh den 465 US 1055 (1984):

[T]he Constitution "does not require a new trial

---

[30] In *Acree, supra* at 1384, the jury sent two notes to the trial court during its deliberations. Without notifying either counsel of the questions, the judge responded as follows:

Question: "Should Judge O'Connor have included consideration of loss of car for 9 months in instruction #15?"

Response: "Loss of car was not included because the court ruled that he was not entitled to damage for this item."

Question: "We seem to be missing the police report re: machines. Is that point relevant to our deliberations?"

Response: "A police report was referred to, but was not offered or admitted into evidence."

The court held that the responses of the trial judge did not constitute error because "[t]he trial court's explanation did not instruct the jury on what the law is or on how to apply the law to the evidence. Nor did it instruct the jury on how to conduct itself. It merely gave the jury collateral information that did not affect its deliberation." *Id.* at 1385.

every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v Phillips,* 455 US 209, 217 [102 S Ct 940; 71 L Ed 2d 78] (1982). There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial. The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice.

We are persuaded that this Court can no longer "ignore the day-to-day reality of courtroom life" in Michigan. While we are mindful of the right to a fair trial, we cannot ignore the interest of society in the administration of justice, and the interest of the state in the effective use of its judicial and law enforcement resources. Furthermore, we find merit in the concern for the victims of crime expressed by Judge SAWYER in his *Lyons* concurrence. We, too, believe that it is unconscionable that a victim must be put through another trial in futile reverence to a rule which fails to serve the interests of justice.[31] Therefore, we draw from the reasoning of the Court of Appeals jurists who have urged us to review this issue, as well as from the reasoning of the federal courts, to modify the rule of automatic reversal.

The linchpin of the new rule centers on a showing of prejudice. For the purposes of this rule, we broadly define prejudice as " 'any reasonable possi-

[31] In *Pannell,* the victim was raped and brutalized by three men. It is unthinkable to have her relive the nightmare by requiring a new trial merely because there were administrative communications with the jury, communications which we firmly believe did not have any reasonable possibility of prejudice to the defendant.

bility of prejudice.' "[32] A reviewing court must reverse the conviction if it determines that a defendant has been prejudiced by an ex parte communication with the jury.

We hold that before a reviewing court can make a determination regarding the prejudicial effect of an ex parte communication, it must first categorize the communication into one of three categories: substantive, administrative, or housekeeping. This will necessarily lead to a decision regarding whether a party has demonstrated that the communication was prejudicial or that the communication lacked any reasonable prejudicial effect.[33]

Substantive communication encompasses supplemental instruction on the law given by the trial court to a deliberating jury. A substantive communication carries a presumption of prejudice in favor of the aggrieved party regardless of whether an objection is raised. The presumption may only be rebutted by a firm and definite showing of an absence of prejudice.[34] See *Remmer, supra.*

Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication has no presumption of prejudice. The failure to object when made aware of the communication will be taken as evidence that the instruction was not prejudicial. Upon an objection, the burden lies with the nonobjecting party to demon-

[32] *Reynolds, supra* at 8.

[33] See n 4.

[34] The prosecution may rebut the presumption of prejudice with a showing that the instruction was merely a recitation of an instruction originally given without objection, and that it was placed on the record. See *Black, supra.* In addition, the presumption of prejudice would be overcome with a showing that the trial court had expressed its intent to communicate with the jury and counsel had given prior consent to the communication, as well as to the substance of the instruction. *Anderson, supra.*

strate that the communication lacked any prejudicial effect.[35] Alternatively, a reviewing court, upon its own volition, may find that an instruction which encouraged a jury to continue its deliberations was prejudicial to the defendant because it violated the ABA Standard Jury Instruction 5.4(b), as adopted by this Court in *Sullivan, supra.*

Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. A housekeeping communication carries the presumption of no prejudice. First, there must be an objection to the communication, and then the aggrieved party must make a firm and definite showing which effectively rebuts the presumption of no prejudice.[36]

**D**

In *France,* the Court of Appeals found no error with regard to the typewritten definition of second-degree criminal sexual conduct which was sent to the jury because the note had received the prior approval of counsel. The Court followed the analysis in *People v Anderson,* 418 Mich 31; 340 NW2d 634 (1983), and held that no prejudice was shown with regard to the typewritten note. We agree.

---

[35] Here we depart somewhat from the *Acree* rule. In order to best safeguard the defendant's right to a fair trial when balancing it against the state's interest in effective use of its judicial and law enforcement resources, we believe that the burden of persuasion should remain with the prosecution to show a lack of prejudicial effect. However, we reiterate that there is no presumption of prejudice to overcome with regard to administrative communications.

[36] See *United States v Dinorscio,* 661 F Supp 1041, 1045 (D NJ, 1987), which held that the *Remmer* rule (the burden is on the government to prove that the presumptive prejudice was harmless) only shifts the burden to the government "if the improper contact involves the matter pending before the jury"—the guilt or innocence of the defendant.

We find that the typewritten note was a substantive communication because it was a supplemental instruction on the law. However, we hold that the presumption of prejudice was overcome by the consent of the defense counsel prior to the instruction being sent to the jury. As in *Anderson,* the judge expressed his intention to engage in an ex parte communication with the jury, and both parties consented to the communication after having been put on notice by the court. *Id.* Furthermore, the note merely recited the original instruction on second-degree criminal sexual conduct to which there was no objection when given to the jury at the close of trial. *Black, supra.*[37] Therefore, we are unable to find any reasonable possibility of prejudice to the defendant as a result of the typewritten note.

The comments made by the bailiff in *France* were a result of requests made by the jury to review certain pieces of information, some that were taken into evidence and some that were not. In each instance, the judge either provided the jury with the evidence, or he instructed the jury that the information was unavailable because it was not entered into evidence. In *Pannell,* the communications were similar. We find that the ex parte instructions given in both cases come within the category of administrative communication. In each case, the defense counsel waived objection when he was made aware of the instructions, and we are unable to find any reasonable possibility of prejudice to the defendants.

With regard to the note written by the trial court in *Pannell,* we find that the judge merely required the jury to continue its deliberations. The court did not require or threaten to require the

[37] See n 34.

jury to deliberate for an unreasonable time or for unreasonable intervals. Therefore, we find no violation of the rule adopted in *Sullivan*.

### III. CONCLUSION

A defendant is entitled to a fair trial, not a perfect one.[38] Today, we have set forth rules which we believe acknowledge the realities of the courtroom while safeguarding the right of an individual to receive a fair trial. Reviewing courts must first categorize the nature of the communication—substantive, administrative, or housekeeping—and then analyze whether the communication carried any reasonable possibility of prejudice to the defendant. In doing so, we find that the communications which serve as the basis for each of the instant appeals did not result in any possible prejudicial effect to the defendant.

Thus, we reverse the decision of the Court of Appeals in *France* and remand the case to the Court of Appeals for consideration of the remaining issues which the defendant has raised on appeal. Conversely, we affirm the decision of the Court of Appeals in *Pannell.*

BRICKLEY, BOYLE, and GRIFFIN, JJ., concurred with RILEY, C.J.

LEVIN, J. (*dissenting*). Decisions of this Court[1] and court rules[2] absolutely proscribe communica-

---

[38] *Delaware v Van Arsdall,* 475 US 673, 681; 106 S Ct 1431; 89 L Ed 2d 674 (1986); *Brown v United States,* 411 US 223, 231-232; 93 S Ct 1565; 36 L Ed 2d 208 (1973); *Bruton v United States,* 391 US 123, 135; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

[1] See ns 12-16 and accompanying text.

[2] A rule of civil procedure provides:

Rule 2.512 Rendering Verdict

* * *

tion by a judge or a court officer with the jury

> (D)(1) All court officers, including trial attorneys, must attend during the trial of an action until the verdict of the jury is announced.

MCR 2.512(D)(1) repeats the substance of GCR 1963, 512.4. The committee notes state:

> Sub-rule 512.4 is intended to indicate the responsibility of attorneys and other court officers to attend the court until a verdict is to be received. [2 Honigman & Hawkins, Michigan Court Rules Annotated, Rule 512, p 490.]

The "Authors' Comments" state:

> All communications between the trial judge and the jury, after submission of the case, must take place in open court and in the presence of, or after notice to, the parties or their counsel, and the court has no right, without the consent of counsel, to send to the jury room an answer to a question propounded in writing to him by the jurors. M.L.P. Trial § 306: and see, *Donville v Russell,* 1879, Howell, N.P. 8; *Finkel v [Otto] Misch Co* [1939], 291 Mich 630; 289 NW 276; *Hopkins v Bishop,* 1892, 91 Mich 328; 51 NW 902. [*Id.,* p 493.]

Another rule of civil procedure provides:

> Rule 2.516 Instructions to Jury
>
> * * *
>
> (B)(4) While the jury is deliberating, the court may further instruct the jury in the presence of or after reasonable notice to the parties.

This rule repeats substance of GCR 1963, 516.4.
A rule of criminal procedure provides:

> Rule 6.414 Conduct of Jury Trial
> (A) Court's Responsibility. The trial court must control the proceedings during trial, limit the evidence and arguments to relevant and proper matters, and take appropriate steps to ensure that the jurors will not be exposed to information or influences that might affect their ability to render an impartial verdict on the evidence presented in court. The court may not communicate with the jury or any juror pertaining to the case without notifying the parties and permitting them to be present. The court must ensure that all communications pertaining to the case between the court and the jury or any juror are made a part of the record.

without notice to the parties and in the courtroom[3] in their presence.[4] The judge may further instruct a *deliberating* jury in the presence of or after reasonable notice to the parties.[5] Trial attorneys are required to "attend" until the verdict of the jury is announced.[6] All communications pertaining to the case between the judge and the jury are required to be made a part of the record.[7]

The standard jury instructions, both civil and criminal, include an instruction that if the jury wishes to communicate with the judge while it is deliberating, the foreperson shall write a note and deliver it to the bailiff, and that it is not proper to

[3] The court rules do not in terms require that further instructions to a deliberating jury be delivered in the courtroom. But the court rule requirement that further instructions to the jury shall be delivered in the "presence" of the parties, not only in the presence of counsel, means in effect that further instructions shall be delivered in the courtroom. Decisions of this Court so state (see *Wilson v Hartley*, 365 Mich 188, 189; 112 NW2d 567 [1961], cf. *People v Anderson*, 418 Mich 31, 41; 340 NW2d 634 [1983]), and that is the understanding of commentators (see Honigman & Hawkins, n 2 *supra*, p 493, "[a]ll communications . . . must take place in open court and in the presence of, or after notice to, the parties or their counsel").

The constitutional right of the defendant in a criminal case to be present throughout the trial is also implicated. See *Rogers v United States*, 422 US 35, 39; 95 S Ct 2091; 45 L Ed 2d 1 (1975). In *People v Percy Harris*, 43 Mich App 746; 204 NW2d 734 (1972), the Court of Appeals said that the defendant in a criminal case had a right to be present at an inquiry into improper jury influence, and that his attorney could not waive his presence by failing to object to his absence, and ordered a new trial without a showing of actual prejudice.

[4] *Id.*

[5] See ns 2-3.

[6] This is provided for in a rule of civil procedure (see n 2), but not in the rule of criminal procedure (see n 2). That attorneys representing the people and a defendant in a criminal case must attend until the verdict is announced is implicit in the requirement that the court may not communicate with the jury without notifying the parties and permitting them to be present. See n 3.

[7] This is expressly provided in the rule of criminal procedure (see n 2), but not adverted to in the rules of civil procedure. Nevertheless, the importance of preserving all communications, whether the case be civil or criminal, necessitates that all such communications be made a part of the record in both civil and criminal cases.

talk directly with the judge or court officers, "even if the discussion has nothing to do with the case."[8] The juries in both *France* and *Pannell* were so instructed.[9]

The juries in both *France* and *Pannell* followed the instructions and sent notes to the judges. The judges did not, however, follow the decisions of this Court and the court rules in responding to the notes from the juries.

The judges responded ex parte to the notes without first consulting with the lawyers representing the parties. In *France,* the judge instructed a court officer orally off the record to communicate the judge's response orally, again off the record, to the jurors. In *Pannell,* the judge responded by notes handed to a court officer that were delivered by the court officer to the jurors, and the judge's notes were made a part of the record.

---

[8]  If you wish to communicate with the Court while you are deliberating, please have your foreman write a note and deliver it to the bailiff. It is not proper to talk directly with the judge, attorneys, court officers, or other persons involved in the case, even if the discussion has nothing to do with the case.

During your deliberation, you must not disclose the state of your deliberations to others outside the jury room. Therefore, unless you reach a verdict, do not disclose this information, even in the courtroom.

If you wish to examine the exhibits that have been admitted into evidence, please have your foreman write a note and give it to the bailiff. The exhibits will then be given to you and you may examine them in the jury room. [SJI2d 60.01.]

The instruction on exhibits was given in *Pannell* but not in *France.*
The standard criminal jury instructions are, in substance, identical. CJI 3:1:20 and 21.

[9] The instruction in *Pannell* elaborated:

"[P]lease have your foreperson write a note, *knock on the door,* and deliver it to the bailiff." (Emphasis added.) It appears from other transcripts we have examined that judges so instruct the jury, i.e., that if the jury wishes to deliver a note it should knock on the door to attract the attention of the bailiff, and the bailiff is instructed to knock on the door when he returns with a note stating the judge's response.

I

Although the judges in the instant cases violated this Court's decisions and the court rules concerning communications with a deliberating jury, we nevertheless agree with the majority that a conviction should not necessarily be reversed because of "communication with a deliberating jury outside the courtroom and the presence of counsel."[10]

We agree with the majority that where the judge, albeit in violation of this Court's decisions and the court rules, communicates with the jury without first consulting with the lawyers for the parties, a new trial should not be ordered where the terms of the communication were stenographically transcribed in the courtroom or the communication was by means of a note or writing that was preserved as part of the record, and it appears from the writing that, assessed in context, there was not any reasonable possibility of prejudice to the complaining party.

We would, however, adhere to the line drawn by this Court requiring reversal, without a showing of prejudice, where, after the jury begins to deliberate, the judge enters the jury room,[11] as in *Zaitzeff v Raschke,* 387 Mich 577; 198 NW2d 309 (1972),[12]

---

[10] *Ante,* p 142.

[11] Unless a lawyer representing each of the parties and a court stenographer also shall have entered the jury room and the court stenographer transcribes all that occurs.

[12] The jury asked that a portion of the testimony be read. The judge and the court reporter entered the jury room and the court reporter read a portion of the testimony to the jury. The record was silent concerning the portion of the testimony that had been reread to the jury. In reversing and ordering a new trial, this Court said:

With what was written so plainly in 1961 for *Wilson v Hartley,* 365 Mich 188 [n 3 *supra*], concerning the indefensible practice of entering the jury room while the jurors are there, no matter by whom done, one would think that this Court had said enough to prevent what took place here. Yet the practice

seems to go on, and on, and on, encouraged occasionally by "no
prejudice shown" conclusions of a group of Justices who cannot
hope to know what was said, or done, or gestured, or hinted, in
the sanctity of the jury room. [*Zaitzeff, supra,* p 579.]

In *Wilson,* n 3 *supra,* p 189, "the foreman sent a written note to the
trial judge inquiring as to what form was to be used in rendering the
verdict. The judge, who was in the process of trying another case,
gave certain oral instructions to the clerk of the court to give to the
jury in response to the inquiry." The bailiff and the clerk entered the
jury room. The bailiff testified that he did not remember what was
said. The clerk testified that he responded that there was " 'no form
which you will use in giving your verdict. I will ask your foreman if
he has reached a verdict, and if so, what it is. He will tell me what
you have agreed on. And then I will read a form to you and that will
be all.' "

This Court said:

> Trial judges have a responsibility to communicate to the jury
> directly in open court and in the presence of, or after notice to,
> the parties or their counsel. The secrecy of the deliberations of
> the jury is a responsibility of the trial judge. The question of
> communications, either oral or written, from third parties to
> the jurors in the jury room has been the subject of several
> appeals to this Court in the last year. This indicates the
> importance of calling to the attention of the entire trial bench
> their duty to preserve the secrecy of the jury deliberations.
>
> The communication here in question and the answer thereto
> did not pertain to any phase of the case bearing upon
> plaintiff's right to recover—instead the note and the reply
> pertained solely to the proper form in which a verdict should
> be rendered. Although we do not condone such improper
> method of handling a jury trial, under the circumstances we
> are of the opinion that no prejudice resulted to plaintiff and
> that the situation does not constitute a just reason for reversal
> of the verdict and judgment. [*Id.,* pp 189-190.]

*Wilson* was followed by *Salvatore v Harper Woods,* 372 Mich 14, 20;
124 NW2d 780 (1963), where the jury returned to the courtroom and
inquired about figures placed by a witness on a blackboard. The judge
responded on the record in the absence of the parties and counsel,
that the blackboard figures were not an exhibit, and made other
observations on the record. This Court concluded that it did not
appear that the defendant was prejudiced by the colloquy read in
light of the verdict. The Court distinguished *Wilson v Hartley* on the
basis that there the bailiff and clerk entered the jury room to convey
the judge's oral instructions, while in *Salvatore* "the proceedings
occurred *in open court and were recorded.*"

The Court in *Salvatore* said that although "counsel's absence from
the courtroom when a jury returns for further instructions does not
bar the trial judge from proceeding, he should not do so unless *undue*

and *People v Heard*, 388 Mich 182, 183-184; 200
NW2d 73 (1972),[13] or where the judge responds to a
jury request for further information *respecting the
subject matter of its deliberations* orally through a
court officer,[14] as in *People v Kangas*, 366 Mich
201; 113 NW2d 865 (1962),[15] and *People v Cain*, 409

delay of the jury's deliberations would result or unless counsel have
agreed by stipulation on the record to permit such further instruction
in their absence." *Id.,* p 21. (Emphasis in original.)

[13] The judge, without obtaining permission from the lawyers, en-
tered the jury room and delivered twenty-one exhibits to the jurors.
When the judge returned, the defendant's lawyer objected. This Court
said:

> The facts in this case provide an even more compelling
> reason for preventing this type of action. In *Zaitzeff,* counsel for
> both parties agreed they did not need to be present when the
> jury returned its verdict (p 580). In a sense, they acquiesced to
> the action of the trial court, which we found to be reversible
> error. In the instant case, defense counsel strenuously objected,
> and neither counsel, nor the jury, had requested that the judge
> bring in these exhibits. [*Heard, supra,* p 184.]

[14] It is unclear how the judge responded in *People v Chaney,* 411
Mich 1052; 311 NW2d 119 (1981), whether through a court officer or
in some other manner. This Court peremptorily reversed the unre-
ported decision of the Court of Appeals (decided October 24, 1980,
Docket No. 78-444), on the authority of *People v Kangas,* 366 Mich 201;
113 NW2d 865 (1962), *Zaitzeff, Heard,* and *People v Cain,* 409 Mich
858; 294 NW2d 692 (1980). The Court of Appeals had not addressed
the jury communication issue although the defendant had raised the
issue in that Court. This Court acted on the basis of the following
statement by the judge:

> Alright [sic], the record should reflect that the jury has
> reached a verdict. I am going to call them out.
> They did request a note asking for Elliott's and Officer
> Hackney's testimony, but before we had a chance to read it
> back to them, they then sent out another note asking for the
> proper wording of the charges against Mr. Chaney, *which I did
> give them that.* Then almost immediately they did come back
> with a verdict. [Emphasis added.]

The record did not indicate what had been "give[n to] them," nor was
it claimed in contrast with *Brigham v Marks,* 428 Mich 911; 409
NW2d 209 (1987), and text immediately preceding n 18, that the
response was written.

[15] This Court described what had occurred:

Mich 858; 294 NW2d 692 (1980),[16] and in the instant case of *France*.[17]

Although those decisions of this Court have been characterized as a "strict rule" of "automatic" reversal whenever the judge communicates with a deliberating jury other than in the courtroom and in the presence of counsel, the strict rule of reversal without a showing of prejudice has actually been held by this Court to be applicable only in cases where the judge entered the jury room (*Zait-*

> During the course of the deliberations, there was a knock on the jury room door and the sheriff went into the jury room. Some conversation occurred, after which the sheriff came out and asked to see the trial judge. The sheriff talked with the trial judge in private. In his opinion on motion for new trial, the judge stated he had discussed the matter with both counsel and together they researched the point in question. Later the judge, out of hearing of counsel, instructed the sheriff to return to the jury room, where he talked with the jurors. Shortly thereafter, the judge called the jurors into open court and instructed the jury. In his instructions the judge acknowledged he had given them instructions through the sheriff and stated he wanted to clear up any points concerning instructions. He did not advise the jury to disregard the instructions given them by the sheriff. The jury left the courtroom for further deliberations and subsequently came back with a manslaughter verdict. [*Kangas, supra,* p 205.]

[16] This Court adopted the dissenting opinion in the Court of Appeals, *People v Cain,* 94 Mich App 644, 647-648; 288 NW2d 465 (1980).

The judge had responded to a note from the jury inquiring whether the verdict had to be unanimous by instructing the court officer "to tell the jurors that their verdict had to be unanimous." *Id.,* p 645. The court officer testified at a post-trial hearing that he had followed those instructions and "[s]tanding in the doorway, not entering the jury room, he told the jurors that their verdict had to be unanimous." *Id.*

The trial judge had granted the defendant's motion for a new trial. The majority in the Court of Appeals said that "[t]he court acted improperly, but the actions do not require a new trial." *Id.,* p 646. The dissenting judge said: "[T]he communication to the jury was in the nature of an instruction, off the record and without counsel, in (at the perimeter of) the jury room, and while the jury was deliberating." *Id.,* p 648.

[17] In *France,* the judge gave his instructions to the court officer off the record. The court officer responded orally to the jury without a court stenographer being present. A different question would be presented if both oral communications were on the record.

*zeff* and *Heard*) or responded orally through a court officer (*Kangas* and *Cain*), and, thus, in situations where there is not a written record of the judge's response.

In *Brigham v Marks*, 428 Mich 911; 409 NW2d 209 (1987), this Court reversed by peremptory order an unreported decision of the Court of Appeals that had ordered a new trial where the jury had sent a note asking "to see the exhibits and the transcript," and the judge had responded by sending the bailiff to the door of the jury room with the exhibits and the note from the jury, with a notation added by the judge, that the transcript was not in evidence. This Court said: "There was no unauthorized presence in the jury room. Further, the trial court correctly communicated to the jury that there was no transcript in evidence." *Id.*

Earlier, in *People v Anderson*, 418 Mich 31, 40-41; 340 NW2d 634 (1983), this Court had found there was not error requiring reversal where the judge, before jury deliberation had begun and after he had consulted with counsel and determined that there would be no additional instructions, told the jurors at the door of the jury room to begin their deliberations.[18] This Court said that its decision "should not be taken in any way as approval

---

[18] The judge concluded his instructions stating he would discuss them with the lawyers, and if there were no additional instructions, he would then come to the jury room and advise that there would be no more instructions, whereupon "any verbal communication between us shall cease." After determining that there were no further instructions, the judge announced that he would, with the consent of both counsel, advise the jury to commence deliberations, and apparently did so.

The judge thus had announced the procedure he would follow, and no objection was made by defendant's lawyer. All the justices agreed that there was no error requiring reversal. The majority said it would not count as a factor whether jury deliberations had commenced, and emphasized rather that the judge had acted with "the parties' leave and no party or counsel for any party voiced any objection to the judge's *proposed* procedure . . . ." *Id.*, p 40. (Emphasis added.)

of the practice employed in this case. It was an unwise and potentially prejudicial procedure."

Despite the rhetoric—"strict reversal," "harsh" rule—and the "automatic" reversal characterization, there is *no* reported decision (or unreported decision[19] of which we are aware) of the Court of Appeals (see part III) ordering a new trial, where, although the judge responded to the jury without first consulting with the lawyers for the parties, he did so in writing albeit not on the record in the courtroom.

While "the better, simpler, and wiser practice" might indeed be to require the judge to communicate with the jury only from the bench in the courtroom,[20] and many judges follow that practice, it appears from the transcripts in *Pannell* and in the abeyance cases, and from other transcripts we have from time to time examined, that the actual practice of many judges is to respond to notes from the jury by a handwritten response penned on the jury's note or by a separate note or other written response that is handed to the jury without oral communication.

[19] Other than the decision reversed by this Court in *Brigham v Marks, supra.*

[20] In *People v Anderson, supra,* pp 40-41, this Court said:

There is simply no showing of prejudice in this case, and I concur with my colleague's conclusion that a new trial is not required, but the commencement of deliberations should not be a factor in the determination. This view should not be taken in any way as approval of the practice employed in this case. It was an unwise and potentially prejudicial procedure. *The better, simpler, and wiser practice would require the trial judge to communicate with the jury only from the bench in the courtroom and on the record.* While experience suggests that that may sometimes be a cumbersome and time-consuming procedure, it is a price worth paying to preserve the integrity of the factfinding process, the appearance of jury independence, and the avoidance of the expense, delay, and consumption of judicial resources involved in appellate evaluation of jury room contact between the court and the jurors. [Emphasis added.]

To the extent that this Court's decisions and the court rules do not recognize the practice of responding to the jury by separate note or other written response, this Court should consider modifying the court rules to recognize that the judge may respond either in the courtroom *or* by note or other written response, as long as the judge does so after first consulting with the lawyers for the parties in the courtroom or in chambers on the record, and in the presence of the defendant in a criminal case,[21] and the response is communicated to the jury without any oral exchange between the jurors and the court officer when he returns to the jury room with the judge's written response.

II

The majority asserts that "the realities of trial practice lead us to the determination that the harsh rule of automatic reversal goes beyond the limits necessary to safeguard the right of a defendant to a fair trial."[22] That and " 'the day-to-day reality of courtroom life' in Michigan"[23] together with "the interest of society in the administration of justice, and the interest of the state in the effective use of its judicial and law enforcement resources"[24] and "concern for the victims of crime" ("it is unconscionable that a victim must be put through another trial in futile reverence to a rule

[21] See n 3.

[22] *Ante,* p 142. The rule barring ex parte communication with the jury was developed in both civil and criminal cases, and applies with equal force in civil and criminal cases. The rule safeguards not only the right of the defendant in a criminal case to a fair trial, but the right of the people to a fair trial in a criminal case. It also safeguards the rights of plaintiffs and defendants in civil cases to a fair trial.

[23] *Ante,* p 162.

[24] *Id.*

which fails to serve the interests of justice")[25] persuade them that a new rule should be adopted.

The "new rule centers on a showing of prejudice. For purposes of this rule, we broadly define prejudice as 'any reasonable possibility of prejudice.' "[26]

A

The majority goes on to classify communications with a deliberating jury into three categories:

—Substantive, which encompasses "supplemental instructions on the law";

—Administrative, including "instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations";

—Housekeeping, described as communications "between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general 'housekeeping' needs that are unrelated in any way to the case being decided."[27]

A substantive communication would carry a presumption of prejudice. A housekeeping communication would carry a presumption of no prejudice. An administrative communication would carry no presumption.

A failure of defense counsel to object to a substantive communication would not preclude appellate counsel from assigning error on appeal. A failure to object to an administrative communication, however, "will be taken as evidence that the administrative instruction was not prejudicial."[28]

Where there has been a substantive communication, the prosecution would have the burden of

25 *Id.*

26 *Ante,* p 142.

27 *Ante,* p 144.

28 *Ante,* p 143.

rebutting "by a firm and definite showing" the "*absence* of prejudice"[29] without regard to whether defendant's trial lawyer objected. Where there has been an administrative communication, "the burden of persuasion lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect" *if* the defendant's lawyer objected at the trial level.[30] A defendant must object to a housekeeping communication to preserve the issue and "must make a firm and definite showing which effectively rebuts the presumption of no prejudice."[31]

B

The majority would classify the communications at issue in the instant cases as administrative communications.[32] The majority concludes that "the record evidence indicates that neither defendant has suffered 'any reasonable possibility of prejudice' as a result of the communications."[33] The majority reverses the decision of the Court of Appeals in *France,* where the defendant's conviction was reversed and a new trial was ordered, and affirms the decision of the Court of Appeals in *Pannell,* 170 Mich App 768; 429 NW2d 233 (1988), where the defendant's conviction was affirmed.

III

We would affirm the decisions of the Court of Appeals in both *France* and *Pannell,* and, thus, would, with the Court of Appeals, affirm Pannell's

[29] *Id.* (Emphasis in original.)

[30] *Id.*

[31] *Ante,* p 144.

[32] France's and Pannell's trial lawyers did not object when made aware of the communications.

[33] *Ante,* p 144.

conviction and reverse France's conviction and remand for a new trial.

A

In *France,* after the jury was instructed and left the courtroom, the judge obtained the agreement of counsel for the parties that in the event the jury asks for exhibits, the judge could send them to the jury through a court officer. An hour later, the jury sent a note asking to see a diagram of complainant Brenda Villanueva's house and the exhibits that were produced by the prosecution. The judge subsequently reported on the record that he had instructed a court officer "to tell them that the diagram on the board wasn't made an exhibit, thus it's not one of the exhibits that can be brought to them. They're [sic] response was okay." And the exhibits were given to them.

The judge said that he had received another note asking to hear France's testimony, as well as Brenda Villanueva's testimony. The prosecutor said he had no comment on the requests. France's lawyer said that he had no objection to the handling of the diagram in the manner in which the judge had responded, but that he would like the jury to hear the entire testimony of both witnesses. After the testimony was played back to the jury, the jury resumed its deliberations.

The judge reported at 4:30 P.M. that in response to a jury request for a legal definition of criminal sexual conduct, he had sent to the jury a typewritten version of criminal sexual conduct in the second degree that had been earlier approved by France's lawyer. The judge also reported that he had received a note from the jury at 3:45 P.M. inquiring: "May we see the police report on Brenda that was entered into an exhibit? Exhibit

*#4?*" The judge said: "And the response to them was that Exhibit 4 was marked but was not received in evidence; and, therefore, we were not able to give them that." And that at 3:50 P.M., he had received a note stating: "We have reached a verdict."

The complainant, Brenda Villanueva, had been impeached with her original statement to the police set forth in exhibit 4. She originally told the police that she could not identify the perpetrator, but identified France at the trial. It was alleged that there were other inconsistencies between the trial testimony and the statements reported in exhibit 4.[34]

France argues on appeal that the court officer may have told the jury "something" that would have led the jury to believe that exhibit 4 should be ignored because it did not constitute evidence. He argues that "[a]ny slight misstatement by the clerk in this area could have led the jury to disregard substantial impeachment evidence. Such a misstatement is guarded against when counsel is present to help formulate the language."[35]

_____

[34] During the early morning hours, France broke into the home of Brenda Villanueva. Villanueva identified France as the man who awakened her, put a gun in her face and demanded money. Villanueva testified that as France moved around the first floor of her home with her, he threatened her with a knife and then touched her breasts. When this happened, Villanueva screamed and ran out the front door. France fled.

France testified in his own behalf and confessed that he broke into Villanueva's home with the intent to steal. He described all his activities in great detail. He told the jury that he made a lot of noise breaking into the house because he wanted to be certain that no one was home.

France testified that he went into Villanueva's bedroom and saw her leaning upon the bed. He told her to be quiet and took her downstairs. France denied having any sort of weapon or anything fashioned or designed to look like a weapon. France denied threatening to kill Villanueva, but acknowledged that he got more and more nervous when she could not find her purse.

[35] France's lawyer argues:

To be sure, France's trial lawyer responded that he had no objection when the judge reported what had occurred. Had France's lawyer objected, the court officer, and, after the verdict had been read, each member of the jury, and possibly the judge, could have been sworn and questioned by the prosecutor and France's lawyer. But it was already too late to have attempted to rectify any miscommunication with the jury by corrective instruction.

The court allegedly instructed the clerk to tell the jury that the map of the house and the PCR [exhibit 4] used to impeach the victim and Amy were not in evidence. This error was particularly important because the clerk instructed the jury on evidence and its use. Of course, she could as easily have told them something that would have led the jury to believe that these items were to be disregarded because they did not constitute evidence. This is a particular problem here because the court instructed that only evidence could be considered, pursuant to CJI . . . . Any slight misstatement by the clerk in this area could have led the jury to disregard substantial impeachment evidence. Such a misstatement is guarded against when counsel is present to help formulate the language. The clerk's instructions here may well have affected the verdict and so constituted sufficient potential prejudice to require a new trial.

The impeachment evidence itself was crucial, particularly the PCR, because it damaged the general credibility of the Complainant and Amy and specifically impeached the evidence on whether Defendant was armed. The PCR indicated that Amy originally told the police that she had seen nothing . . . . This directly contradicted her testimony that she had seen a knife-like object. The PCR indicated that the Complainant herself did not get a good look at the perpetrator and so could not identify anyone. This conflicted with her alleged ability to identify Defendant at trial. Also the PCR indicated that she was unsure of whether the perpetrator had a gun or a knife. Such ambiguity would lead a jury to question whether any weapon was involved at all—a hotly contested issue here where Defendant denied having any weapon, as his primary defense. There was much testimony and discussion regarding the PCR at trial. Defense counsel referred to it extensively in closing . . . . There was certainly the potential of prejudice and a reasonable possibility of prejudice here.

Also the answer to the question on the PCR generated a verdict. Within five minutes after answering the question, the jury reached a verdict . . . . They were no doubt undecided because of this impeachment evidence. Any answer to a jury question that causes a verdict so quickly cannot be said to have had no affect on the verdict.

The "Moving Finger" had written and moved on over half an hour before France's lawyer was given an opportunity to object. To require a lawyer to insist on an inquiry, in order to preserve his client's position, puts him in an awkward position. The lawyer would not be challenging some act of the prosecutor, but rather the judge's conduct. The lawyer is put in the position of questioning the accuracy of the judge's report of what occurred, and of seeking by "cross-examination" of the court officer, jurors and possibly the judge, to prove that it was inaccurate or incomplete.

The judge would be both the hearing officer and a witness. The principal witness would be his court officer, who has just heard the judge state on the record what the court officer was supposed to have said. If the lawyer succeeds in establishing that the court officer said more than the officer was supposed to have said, the court officer and the judge would be embarrassed, to say the very least. The lawyer may have to practice in that court day after day. Is it not expecting too much of the lawyer to require that he seek to embarrass the court officer and the judge? I think so.[36]

---

[36] The adoption of the tripartite classification set forth by the majority would, however, require a lawyer to seek such an inquiry, and not to obligingly say "no objection" when a judge reports that he has, ex parte, authorized an oral communication with the jury.

A judge who, after he has responded ex parte to a jury inquiry, reports, on the record, to counsel concerning the communication with the jury, should be required, possibly by an amendment of the rule, to explain why he engaged in an ex parte communication with the jury, i.e., he attempted to reach counsel but was unable to do so, and to have waited longer in responding would have resulted in "undue delay." See Salvatore, n 12 supra, p 21. (Emphasis in original.)

France's lawyer's statement that he had no objection may be seen as "waiving" firstly the ex parte communication, secondly the communication being oral, and thirdly an evidentiary hearing concerning what was actually said by the judge and the court officer and what the jurors said, if anything, in response. It is again noteworthy that in a criminal case the asserted waiver implicates the constitutional right of the defendant to be present throughout the trial. See Rogers v United States and People v Percy Harris, n 3 supra.

This Court's conclusion expressed in *Zaitzeff* that it will be difficult, if not impossible, to reconstruct what actually occurred where there are oral communications with the jury is the product of experience. What occurred in *France* was a lapse, that infrequently, almost never is seen to occur. The reason such departures do not occur is because judges know that oral communication with a deliberating jury is an absolute no-no, and we should keep it that way by not retreating to "encouraging" compliance with the rule.

B

We would affirm the defendant's conviction in *Pannell.* While the trial judge violated this Court's decisions and the court rules in responding to the jury without first consulting with Pannell's lawyer and the prosecutor, we can readily determine whether there was any prejudice to Pannell's rights in the judge's failure to have done so because he responded with a note and not orally.

The jury in *Pannell* had expressed its inability to reach a verdict on the morning of the second day of deliberations. We cannot imagine any argument that Pannell's lawyer could have made that would have persuaded the judge, so early in the jury's deliberations, to respond other than that the jury should continue to deliberate.

We do not wish to be understood as saying that prejudice must be shown when the judge violates the rule and responds to the jury without consulting with the lawyers. Rather we are saying that where it is *manifest* there was no prejudice, reversal is not required because of a failure to consult the lawyers before responding.

IV

The argument that the interest of society in the

administration of justice requires the adoption of a new rule is not borne out by the record of reversal.

There are eight decisions of the Court of Appeals reported (or unreported of which we are aware) in the eighteen years since *Zaitzeff* was decided, reversing and ordering a new trial because of improper communication between the judge and a deliberating jury. In each of these cases the communication was delivered orally, and thus there was no record of what actually was said other than the judges' after-the-event report of what he believes occurred or expected to occur:

—*Marchlewicz v Stanton,* 50 Mich App 344; 213 NW2d 317 (1973), where, after the jury had retired to deliberate, the judge entered the jury room and conversed with the jury foreman;

—*People v Zeegers,* 61 Mich App 546, 547; 233 NW2d 76 (1975), where the court officer responded, without the approval or knowledge of the court or counsel, to a jury inquiry, "[s]hould we just consider the tapes, or all of the evidence?" that the jury should consider "all of the evidence";

—*People v Olson,* 66 Mich App 197, 198; 238 NW2d 579 (1975), where the judge entered the jury room to talk to the jury, and, after the verdict, in response to a motion for a new trial, said that "nothing was discussed in the jury room except the time when the jury would recess and resume, which, of course, are subjects within the Court's sole discretion";

—*People v Washington,* 119 Mich App 373, 375; 326 NW2d 514 (1982), where, as in the instant case of *France,*[37] the jury asked to see pictures used in

[37] The Court of Appeals in *France* said that the judge informed the jury that "the police report was marked as an exhibit but was not received into evidence and therefore they could not see it," and that *France* mirrored *Washington* and reversal was required. Unpublished opinion per curiam of the Court of Appeals, decided August 18, 1988 (Docket No. 89986), p 2.

questioning a witness, and the judge instructed the bailiff to tell the jury that "they were not exhibits, were not part of the record, *and were not evidence,* and they could not have them" (emphasis added);

—*People v Lyons,* 164 Mich App 307, 309; 416 NW2d 422 (1987), where the jury advised by note that it could not reach a decision, and the judge instructed the bailiff to orally inform the jury, "keep on working";

—*People v Foreman,* unpublished opinion per curiam of the Court of Appeals, decided October 14, 1987 (Docket No. 91819), p 2, where the judge, like the judge in *Washington* and the judge in the instant case of *France,* responded to a note from the jury asking to see police reports by instructing a court officer to tell the jurors that "the police reports *were not evidence* in this case" (emphasis added);

—The instant cases of *People v France.*[38]

The Court of Appeals, in affirming the defendant's conviction in the instant case of *Pannell,* captured the essence of this Court's decisions in *Zaitzeff, Heard, Kangas,* and *Cain,* and the line that distinguishes cases where reversal is required without a showing of prejudice from cases where a showing of prejudice is required, when it said:

> In *Cain,* as in *Lyons,* the trial judge sent the bailiff *to orally answer the jury's question.* In both cases, it was impossible to know what was said to the jury by the bailiff and, consequently, to determine whether there was any prejudice to the defendants' rights. [*People v Pannell, supra,* p 770. Emphasis added.]

Similarly, when a judge enters the jury room and responds personally to an inquiry from the jury, it

---

[38] See n 33 and accompanying text.

is generally "impossible to know what was said to the jury by the [judge] and, consequently, to determine whether there was any prejudice to the defendants' rights." *Id.*

Eight reversals by the Court of Appeals in eighteen years suggests that the rule stated by this Court in *Zaitzeff,* and applied by this Court in subsequent decisions, requiring reversal without a showing of prejudice where, after jury deliberations have begun, either the judge enters the jury room or responds to an inquiry from the jury orally through a court officer, is not interfering with, but rather that it may be promoting the interests of society in the administration of justice, and also the interests of the state in the effective use of judicial and law enforcement resources, and that it may also be consistent with concern for the victims of crime by avoiding unnecessary retrials.

V

A number of Court of Appeals judges have asked this Court to reconsider the "automatic reversal rule."[39] Since there have been only eight reversals in eighteen years, it appears that the "automatic reversal rule" is not so automatic. The predicate for their request may, however, be instances of questionable reversal in unreported decisions of the Court of Appeals.

The task of reviewing the unreported decisions of the Court of Appeals in criminal cases in order to locate decisions concerning communication with a deliberating jury would certainly be a tedious one. One would think, however, that if there have been instances of questionable reversal in unre-

[39] See *People v Lyons, supra,* p 311; *People v Pannell, supra,* p 771. See also *People v Kent,* 157 Mich App 780, 791-792; 404 NW2d 668 (1987).

ported decisions, the judges who have called upon
this Court to change the rule could locate them
without too much difficulty and thus provide evi-
dence in support of their exhortation that we
replace with an exhortation[40] a rule that has
worked to reduce and largely eliminate ex parte
communication with a deliberating jury.

The lesson of experience is that exhortation will
not guard against ex parte communication by a
judge with a deliberating jury. See *Wilson v Hart-
ley,* 365 Mich 188; 112 NW2d 567 (1961), and
*Salvatore v Harper Woods,* 372 Mich 14; 124
NW2d 780 (1963), discussed in n 12. This Court's
pronouncement in *Zaitzeff* was the result of the
failure of exhortation.

The present rule is working. Judges no longer
enter the jury room after the jury begins to delib-
erate. Most judges obey the rule barring ex parte
communication with a deliberating jury, and con-
sult with the lawyers before responding to a note
from the jury, unless it would cause "*undue* de-
lay"[41] to do so, or arrangements have been made in
advance how the judge should respond to specific
inquiries.[42]

We rarely see a case where a judge responds to
an inquiry from the jury except on a stenographi-
cally transcribed record or by a note or other
writing that becomes part of the court file. If trial
judges perceive that they may respond orally off
the record, the progress that has been achieved in

---

[40] The majority states:

> [C]onformance with the court rules has been, and continues
> to be, *discouraged* by this Court. [*Ante,* p 142. Emphasis added.]

[41] *Salvatore,* n 12 *supra,* p 21 (emphasis in original).

[42] For example, the lawyers may put together the exhibits and
agree that if the jury asks for them, they may be sent into the jury
room, without need for the judge to consult further with counsel.

obtaining compliance with the rule barring ex
parte communication with a deliberating jury may
be lost. Some "busy" judges may become less com-
pliant with the rule barring ex parte communica-
tion when responding to jury requests, with the
result that there will be more grist for the appel-
late mill. Court of Appeals judges who are trou-
bled by the present rule may find more troubling
the added workload that may result were circuit
and Recorder's Court judges to backslide and
thereby provide more work for the Court of Ap-
peals.

In this connection, it is noteworthy that in the
five cases being held in abeyance for this Court's
decisions in the instant cases, the Court of Appeals
affirmed the convictions in every case:[43]

—*People v Bethea*,[44] where the judge responded

[43] The Court of Appeals found that there was not error requiring
reversal in the following cases:

*People v Johnson,* 53 Mich App 329; 220 NW2d 65 (1974), where the
Court instructed the stenographer to enter the jury room and reread
instructions in the presence of the prosecutor and defendant's lawyer
pursuant to the agreement reached before this was done. *Rushing v
Wayne Co,* 138 Mich App 121; 358 NW2d 904 (1984), where the bailiff,
responding to a knock on the jury door, momentarily entered the
threshold. He later testified that when various jurors began asking
questions, he simply told them to write a note for the judge.

The Court of Appeals has also considered whether a new trial is
required where the judge converses with a particular juror before the
jury begins to deliberate. A new trial was ordered in *Szopko v
Kinsman Marine Transit,* 96 Mich App 64; 292 NW2d 486 (1980),
where the judge had an off-the-record conversation, without the
presence of counsel, with a particular juror concerning an incident
that had occurred during the course of the trial. The Court similarly
so held in *People v Percy Harris,* n 3 *supra,* where the conversation
again concerned an incident that had occurred during the course of
the trial. In *People v Bennett,* 52 Mich App 742; 218 NW2d 407
(1974), the jury verdict was affirmed where two women and a painter
had entered the jury room at a time when they were not deliberating,
the women to use the bathroom and the painter to paint.

[44] Unpublished opinion per curiam of the Court of Appeals, decided
July 31, 1989 (Docket No. 108224). The Court of Appeals said that
there was nothing in the record indicating that the judge's reply was
actually communicated to the jury.

without consulting counsel by penning a note that was thereafter placed in the court file;

—*People v Wilson,*[45] where the judge conferred with the attorneys and responded by note to the jury, who gave it to the jury forewoman and told her to read the note to the jury and hand it back to him, and the note was placed in the court's file;[46]

—*People v Ross,*[47] where the jury sent a note requesting a fifteen-minute break, defense counsel was unavailable, and the judge instructed the court officer to respond orally that the jurors could take a break and return in fifteen minutes, and this was related on the record after the noon recess;[48]

[45] Unpublished opinion per curiam of the Court of Appeals, decided January 4, 1989 (Docket No. 97464).

[46] The Court of Appeals found that there was no error requiring reversal citing its decisions in *People v Pannell,* n 39 *supra, People v Allen Brown,* 159 Mich App 428, 429-431; 407 NW2d 21 (1987), and *People v Kent,* n 39 *supra,* pp 789-792.

[47] Unpublished opinion per curiam of the Court of Appeals, decided October 30, 1989 (Docket No. 108514).

[48] The Court of Appeals found no error requiring reversal relying on *People v Kent,* n 39 *supra,* where the court clerk took meal orders from the jury during deliberations, and *People v Allen Brown,* n 46 *supra,* p 430, where the court placed on the record that he had sent the bailiff to bring the jurors in because he was going to send them home for the weekend, and asked the bailiff what was said to him. The bailiff responded, "They said they were almost finished." The judge said he would wait a few minutes, but not later than six o'clock. Neither party objected. The jury returned with a guilty verdict ten minutes later. The court concluded that there was no error requiring reversal:

The facts in the present case are even less egregious than those in *Kent,* since the bailiff apparently only knocked on the door to the room in which the jury was deliberating and then, in response to the jury's request, informed the trial judge that the jury was almost finished deliberating. It is not apparent that the bailiff entered the room or that he interacted with the jury. He was merely a messenger. [*People v Allen Brown, supra,* p 431.]

The Court in *Ross,* n 47 *supra,* also relied on its decision in *People v Montgomery,* 176 Mich App 501; 440 NW2d 21 (1989).

—*People v Montgomery,* 176 Mich App 501; 440 NW2d 21 (1989), where the foreperson asked the court officer if the jury could go to lunch, the judge approved, and the court officer so informed the jury and that the jurors were to return at 2:15 P.M.; the judge informed counsel of this communication and there was no objection;[49]

—*People v Wytcherly (On Rehearing),* 176 Mich App 714, 716; 440 NW2d 107 (1989), where the judge responded in writing to a note from the jury verdict stating that it was down to two people from reaching a total agreement, "keep working."[50]

While the Court of Appeals affirmed the convictions in *Ross* and *Montgomery,* although the judge responded orally through a court officer, there was little risk of miscommunication or improper influence on the jury's deliberations in a statement that the jury could take a fifteen-minute recess or in a statement that the jurors could go to lunch and were to return at 2:15 P.M. There was no suggestion in *Ross* or *Montgomery* that there was any communication respecting the subject matter of their deliberations.

VI

The majority has proposed a tripartite classification for appellate review of ex parte communications by the court or a court officer with a deliberating jury: substantive, administrative, and housekeeping.

Where the communication is oral and is not stenographically transcribed or by a note or other writing that is preserved as part of the record, the

[49] The Court drew a questionable distinction between "an ex parte communication by a court officer," and an ex parte communication by the judge. *Montgomery, supra,* p 503.

[50] On rehearing it appeared to the Court of Appeals that both counsel had been consulted before the judge responded.

appellate court will generally not have an adequate record on which to base such a classification. The majority nevertheless states:

> Upon appeal, *it is incumbent upon a reviewing court to first categorize the communication* that is the basis of the appeal. This will *necessarily* lead to the determination of whether a party has demonstrated that the communication was prejudicial, or that the communication lacked any reasonable prejudicial effect. [Emphasis added.][51]

The proposed tripartite classification begs what, in most cases, is the central question, namely whether the communication was respecting the subject matter of the jury's deliberations, and, more particularly, whether it was of a sort that could pose any reasonable possibility of prejudice. Clearly, once it is established that a communication, oral or written, concerned only "meal orders, rest room facilities, or matters consistent with general 'housekeeping' needs that are unrelated in any way to the case being decided,"[52] it would be extraordinary for there to be any reasonable possibility of prejudice as a result of the communication. Similarly, I would agree, a statement that "certain pieces of evidence" are unavailable, will not ordinarily pose any reasonable possibility of prejudice.[53]

The troublesome issue, where there is not a written record of what occurred, is a factual one: Whether the jury in *France* was told only that a police report[54] is not an exhibit or whether what was said by the court officer was reasonably susceptible of being understood as an instruction that

[51] *Ante,* p 143.

[52] *Ante,* p 144.

[53] *Ante,* p 143.

[54] Or in another case, a deposition transcript.

the jurors were not to consider the contents of the police report as evidence. Indeed, when a jury asks for a police report that was not received in evidence as an exhibit, it may be appropriate for the judge to explain to the jury that while the police report is not an exhibit, the contents, as related on the stenographic record, may be considered to impeach and in assessing the credibility of the witness whose statement is reported in the police report, and that the jurors should attempt to recall, through their collective memories, the testimony regarding the police report.

The judge's response to a request for an exhibit that was marked and not introduced into evidence may thus encompass, in effect, "supplemental instructions on the law," and thus constitute a substantive, rather than an administrative, communication.[55] One can be sure that lawyers will so contend, and rightfully so. The tripartite classification will not assist in resolving the question whether there is any reasonable possibility of prejudice in an oral response that a police report that was marked as an exhibit was not evidence.[56]

An instruction "encourag[ing] a jury to continue its deliberations"[57] may also be a substantive communication, if the communication includes, and possibly if it fails to include, a supplemental instruction on the law, along the lines of the instruction adopted by this Court in *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974).

The majority would place on the prosecution the burden of rebutting a claim of prejudice by a "firm and definite showing" of "an *absence* of prejudice" where the communication is substantive and the

---

[55] *Ante,* p 143.

[56] See *Washington, ante,* pp 184-185 and n 37; *Foreman, ante,* preceding n 38.

[57] *Ante,* p 143.

"burden of persuasion" to "demonstrate that [an administrative] communication [to which the defendant objected] lacked any prejudicial effect."[58] If the "substantive" or "administrative" communication is stenographically recorded, or there is other written record of the communication, there will be nothing further to "show." And then it will be for the appellate court to determine whether there was any reasonable possibility of prejudice. If there is not a stenographic or written record, the prosecution will be in no better position than the defendant to "show" whether there was or was not prejudice.

In sum, where there is not a stenographic or other contemporaneous written record of the communication, the prosecutor will not be able to show, and an appellate court will generally be unable to determine, whether the communication is "administrative" or "substantive," and may, in a rare case, even have difficulty determining whether an oral communication is "housekeeping." Where there is a contemporaneous written record of the communication, the appellate court will generally be able to make an assessment, without regard to whether the plaintiff in a civil case or a prosecutor in a criminal case or the defendant, in a civil or criminal case, has the burden of persuasion, of whether there was any reasonable possibility of prejudice, even though the rule against ex parte communication with a deliberating jury was violated.

VII

Reference has been made by the majority to decisions of the federal courts.

In *United States v Mesteth,* 528 F2d 333, 334

---

[58] *Ante,* pp 143-144.

(CA 8, 1976), the judge responded to a deliberating jury's requests to have certain testimony reread and to be told whether the defendant was left- or right-handed. The judge responded by "writing 'no' and his signature" on the notes, and delivering them to the jury through the marshall. The court's analysis is consistent with the approach that we believe to be correct.[59]

Similarly, see *Black v Stephens,* 662 F2d 181 (CA 3, 1981), *United States v York,* 830 F2d 885 (CA 8, 1987), *Acree v Minolta Corp,* 748 F2d 1382 (CA 10, 1984), *General Motors Corp v Walden,* 406 F2d 606 (CA 10, 1969), and *Gleeson v Wood,* 321 F Supp 118 (ED Pa, 1970), cited by the majority,

---

[59] It has long been recognized that " 'the orderly conduct of a trial by jury' " requires that parties be present " 'in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged . . . .' " *Rogers v United States,* 422 US 35 [38]; 95 S Ct 2091; 45 L Ed 2d 1 (1975), quoting *Fillippon v Albion Vein Slate Co,* 250 US 76; 39 S Ct 435; 63 L Ed 853 (1919).

This court has recognized that a presumption of prejudice arises from a court's instructing the jury outside the presence of the defendant, but that the presumption "in some instances may be overcome by evidence giving a clear indication of lack of prejudice." *Rice v United States,* 356 F2d 709, 717 (CA 8, 1966). See also *United States v Treatman,* 524 F2d 320 (CA 8, 1975) and *Jackson v Hutto,* 508 F2d 890 (CA 8, 1975), and cases cited. Decisions applying F R Crim P 43 make clear the right of a defendant to have a jury's request answered in open court only after there has been opportunity to be heard, but a violation of Rule 43 may be harmless error. See *Rogers v United States, supra* [39-40]; *United States v Reynolds,* 489 F2d 4 (CA 6, 1973); *United States v Schor,* 418 F2d 26 (CA 2, 1969). And the test for determining whether error is harmless is whether there exists " 'any reasonable possibility of prejudice.' " *United States v Reynolds, supra* at 8.

The jury communications in the instant case are not alleged to have had a coercive effect upon the jury, nor were they of an affirmative or substantive nature, such as the instructions delivered outside the presence of the defendant in *Evans v United States,* 284 F2d 393 (CA 6, 1960). The trial court's only response was simply to refuse the requests. Thus there was no reasonable possibility of prejudice, and the error, if any, was harmless. [*United States v Mesteth, supra,* p 335.]

where also it appears that the response was in writing or transcribed on the record.[60]

---

[60] It appears that in two of the cases cited by the majority that the communication to the jury was oral. In *United States v Reynolds,* n 59 *supra,* pp 7-8, the court said:

> Reynolds' main complaint is that the trial judge communicated with the jury outside the presence of defendant or his counsel. The record reveals that during jury deliberations the foreman asked the bailiff if the jury could have the height of defendant Reynolds. The bailiff relayed this inquiry to the judge's secretary who in turn repeated it to the judge. The judge, using the *same communication system* in reverse order, informed the jury it could have no additional information. [Emphasis added.]
>
> Rule 43, F R Crim P, explicitly states that "The defendant shall be present . . . at every stage of the trial . . . ." The cases hold that it is error for the court to instruct or communicate with the jury in the absence of counsel and without notice to them. *Ah Fook Chang v United States,* 91 F2d 805, 810 (CA 9, 1937); *United States v Marken,* 457 F2d 186, 188 (CA 9, 1972).
>
> The rule requiring that a defendant be present at all stages of the trial must be considered together with Rule 52(a), F R Crim P, which provides that harmless error is to be disregarded. *United States v Gradsky,* 434 F2d 880 (CA 5, 1970); *Yates v United States,* 418 F2d 1228 (CA 6, 1969). Thus, a forbidden communication does not constitute reversible error in every case. "The standard by which to determine whether reversible error occurred . . . is . . . whether there is 'any reasonable possibility of prejudice.'" *Wade v United States,* 142 US App DC 356 [360]; 441 F2d 1046, 1050 (1971). In the present case the judge told the jury it could have no further information. This communication did not create a reasonable possibility of prejudice.

In *Reazin v Blue Cross & Blue Shield of Kansas, Inc,* 899 F2d 951, 978 (CA 10, 1990), the court said:

> Blue Cross also argues that the district court "erred in permitting private communications between its law clerks and the jury." . . . We find no error. The court's communications with the jury all related to the progress the jury was making towards reaching a verdict and occurred after the jury had been deliberating for a considerable period of time. The record confirms the district court's conclusion that "[n]othing was done without the *prior knowledge and approval, or at least acquiescence, of counsel* . . . ." [*Reazin v Blue Cross & Blue Shield of Kansas, Inc,* 663 F Supp 1360, 1442 (D Kan, 1987).] [Emphasis added.]

CAVANAGH and ARCHER, JJ., concurred with
LEVIN, J.

---

The remaining three federal court of appeals and district court
cases cited by the majority do not concern communication by a judge
or a court officer with a deliberating jury. *United States v Butler,* 262
US App DC 129; 822 F2d 1191 (1987); *United States v Pennell,* 737
F2d 521 (CA 6, 1984); *United States v Dinorscio,* 661 F Supp 1041 (D
NJ, 1987).