*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GEOFFREY LAVAR LAWSON,

Defendant-Appellant.

UNPUBLISHED
March 30, 2023

No. 352449
Genesee Circuit Court
LC No. 08-024090-FC

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

RICK, J. (*dissenting*).

I respectfully dissent. In *People v France*, 436 Mich 138, 163; 461 NW2d 621 (1990), our Supreme Court devised a method to efficiently determine whether an ex parte communication is prejudicial, wherein a reviewing court "must first categorize the communication into one of three categories: substantive, administrative, or housekeeping." While I recognize the value of such a tool, I would emphasize that the record must clearly support the conclusion that an ex parte communication belongs to one category over another. Furthermore, I would note that these exercises in language analysis and categorization should never be prioritized over a defendant's due-process rights. It is my view that the majority opinion cannot be reconciled with these principles.

## I. BACKGROUND

As the majority notes, this Court previously affirmed defendant's convictions and sentences on direct appeal in 2012. *People v Lawson*, unpublished per curiam opinion of the Court of Appeals, issued June 26, 2012 (Docket No. 302128). The instant case arises out of a motion for relief from judgment filed by defendant and subsequently denied by the trial court in 2019. Following the trial court's denial, defendant filed a delayed application for leave to appeal, which this Court denied by order in 2020. *People v Lawson*, unpublished order of the Court of Appeals, entered on May 6, 2020 (Docket No. 352449). Defendant appealed to our Supreme Court, which has now remanded for consideration as on leave granted. *People v Lawson*, 966 NW2d 22 (2021).

This appeal primarily concerns two ex parte communications between the trial court and the jury at defendant's 2010 trial, outside of the presence of both defense counsel and the

prosecution. The majority characterizes the first communication as purely administrative and states that it was thus permitted under *France*, 436 Mich at 163. As for the second communication, the majority acknowledges that it was substantive, and admits that it was presumptively prejudicial. However, citing *People v Swain*, 288 Mich App 609; 794 NW2d 92 (2010), the majority now concludes that defendant's failure to raise the issue on direct appeal precludes this Court from granting relief. I respectfully disagree.

## II. ANALYSIS

## A. THE FIRST COMMUNICATION

In its first communication, the jury sent the trial court a note that simply read "Dr. Sauer's testimony," with no further description. Without notifying or consulting the parties, the trial court wrote back, "We do not have a transcript of any witness testimony. It would be too expensive to do that. We can replay Dr. Sauer's testimony on video, but it will take a while for us to put it together. Do you want to see it on video?" The jury did not respond.

If the jury requests a review of testimony or evidence that was not allowed in the jury room during deliberations, "the court must exercise its discretion to ensure fairness and to refuse unreasonable requests[.]" MCR 2.513(P). Assuming that the jury was asking to view a copy of Dr. Sauer's testimony, the trial court appears to have complied with MCR 2.513(P). But even so, the court failed to adhere to MCR 6.414(A), which was still in effect when defendant's jury trial took place.[1] MCR 6.414(A), decided after *France*, specifically obligates the trial court to follow a specific procedure when addressing questions posed by the jury:

> Court's Responsibility. The trial court must control the proceedings during trial, limit the evidence and arguments to relevant and proper matters, and take appropriate steps to ensure that the jurors will not be exposed to information or influences that might affect their ability to render an impartial verdict on the evidence presented in court. The court may not communicate with the jury or any juror pertaining to the case without notifying the parties and permitting them to be present. The court must ensure that all communications pertaining to the case between the court and the jury or any juror are made a part of the record.

Put differently, under MCR 6.414(A), the trial court should have first notified the parties and given them an opportunity to appear in court before returning an answer to the jury. This should not have been an unduly burdensome task. 2010 was not so long ago; even then, every lawyer would have had multiple methods of communication at their disposal. The trial court should not have had trouble contacting the parties and ensuring they were given an opportunity to appear in the courtroom before the court answered the jury's questions. It is unclear why the trial court failed to even attempt to follow this procedure.

Given that the trial court did not adhere to MCR 2.614(A), I would posit that a discussion of whether *France* is controlling puts the cart before the horse. But even accepting that *France*

---

[1] The majority correctly notes that MCR 6.414 was repealed and replaced by MCR 2.513.

applies and that the jury's communication must be placed into one of three categories, the majority's conclusion that the first note was an administrative communication is dubious at best. The three categories of communication—substantive, administrative, and housekeeping—are described as follows:

> Substantive communication encompasses supplemental instruction on the law given by the trial court to a deliberating jury. A substantive communication carries a presumption of prejudice in favor of the aggrieved party, regardless of whether an objection is raised. The presumption may only be rebutted by a firm and definite showing of an absence of prejudice.

> Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication has no presumption of prejudice. The failure to object when made aware of the communication will be taken as evidence that the instruction was not prejudicial. Upon an objection, the burden lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect.

> * * *

> Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. A housekeeping communication carries the presumption of no prejudice. First, there must be an objection to the communication, and then the aggrieved party must make a firm and definite showing which effectively rebuts the presumption of no prejudice. [*France*, 436 Mich at 163-164 (citations and footnote omitted).]

Although it is quite clear that the communication at issue here did not concern a "housekeeping" matter, it is impossible to discern whether the phrase "Dr. Sauer's testimony" was administrative or substantive. The lack of any other context or explanation of the jury's meaning beyond those three words strongly suggests that the note could be interpreted in multiple different ways.

Had the trial court followed the required procedure outlined in MCR 6.414(A), the ambiguity likely could have been resolved, which would in turn have have facilitated a proper review of the matter by this Court. Our review has been similarly thwarted by the trial court's failure to preserve the note itself as part of the record, which, while not required, would certainly have been a beneficial piece of evidence to submit to the Court on appeal. That the note fails to ask an actual question and was not preserved as part of the record are issues that cast no small amount of doubt on the majority's conclusion here. As it stands, one can only speculate as to why the jury did not explain the request, as well as whether the communication "lacked any reasonable prejudicial effect," *France,* 436 Mich at 143. I remain unconvinced that we have received sufficient contextual information with which to categorize the communication in accordance with *France*. Consequently, I disagree with the majority's conclusion that the jury's first note was an administrative communication.

## B. THE SECOND COMMUNICATION

In its second communication, the trial court told the parties that the jury sent a written note that said, "the elements for the charges in count one." As with the jury's first note, is unclear precisely what the jury was communicating to the trial court here because the court did not save the written document, although it appears that the communication was likely substantive. Instead, the trial court summarized what the jury requested on the record, based solely on its own recollection of the note's contents. The trial court then explained that it responded to the jury by stating:

> So, I'm going to show what we did. We went online and we took the elements for felony murder, armed robbery, and second-degree murder, and customized them for this case, and took out all the commas, clauses, and all of that, and that's what we sent in to the jury.

The majority concedes that under *France* and the facts of the case, the jury's second communication was substantive and therefore presumptively prejudicial. But rather than find in favor of defendant, the majority instead concludes that the prosecution rebutted the presumption of prejudice by demonstrating that the trial court merely provided the jury with a written version of the same instructions for Count I that were previously given during the court's recitation of the final jury instructions.

Lawyers and trial judges know the importance of a complete and unambiguous record. They also know that to ensure a clean record, everything must be described in detail for benefit of the reviewing court. Aside from the trial court's failure to keep the jury's second note, which could have been presented as part of the record on appeal, this Court was also not provided with a copy of the written instruction that was delivered to the jury. Additionally, we do not know who drafted the written version of the instruction or the sources used in crafting it. These are not trivial questions, nor does an inquiry into these issues "go beyond the limits necessary to safeguard the right of a defendant to a fair trial." *France*, 436 Mich at 142. The record provided to this Court contains major ambiguities, and without further evidentiary support, it cannot be said with certainty that the written instruction and the instruction previously read to the jury were identical. Accordingly, I disagree with the majority's conclusion that the presumption of prejudice was adequately rebutted on the basis of this record.

## C. MCR 6.508(D)

Finally, I disagree with the majority's conclusion that defendant's failure to object at trial or to raise this issue on direct appeal bars his claim for relief. This belies a stunning lack of understanding for how Michigan's trial courts operated in the early- to mid-2000s. When defendant was tried in 2010, Michigan's indigent defense systems were notably poor—so poor, in fact, that just one year before defendant was tried, the American Civil Liberties Union (ACLU) filed a class-action lawsuit alleging that the constitutional violations committed as a result of poor indigent defense in certain counties—including Genesee, where defendant's trial took place—warranted declaratory and injunctive relief. *Duncan v Granholm*, 284 Mich App 246; 774 NW2d 89 (2009). Around that same time, the National Legal Aid and Defender Association (NLADA) analyzed the various indigent defense systems operational in Michigan and concluded that "none

-4-

of the public defender services in the sample counties are constitutionally adequate." National Legal Aid and Defender Association, *Evaluation of Trial-Level Indigent Defense Systems in Michigan* (June 2008), p 5, available at https://michiganidc.gov/wp-content/uploads/2021/03/NLADA-Race-to-the-Bottom.pdf (accessed March 22, 2023).

I am aware that the bar for establishing entitlement to relief from judgment under MCR 6.508 is a high one, but I believe the record before us contains too many ambiguities to support the majority's ruling here, and moreover, I cannot countenance the idea of viewing this case with a blind eye to reality. It must be acknowledged that when defendant went to trial, he and his counsel were operating in a system that did not encourage lawyers to fully advocate on behalf of their poor clients, which could explain the failure to object at the trial court level and the failure to submit vital pieces of information—the written jury instruction, for example—on appeal. As a result of these issues, the record is so lacking that we can hardly do more than make an educated guess as to how to categorize the ex parte communications that occurred in the trial court. For these reasons, I wholly disagree with the majority's conclusion that defense counsel should be precluded from obtaining relief under MCR 6.508(D). I would grant defendant's motion for relief from judgment, and so respectfully dissent.

/s/ Michelle M. Rick