*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALFRED WILLIAM LANE,

        Defendant-Appellant.

UNPUBLISHED
June 24, 2025
11:19 AM

No. 367584
Monroe Circuit Court
LC No. 2022-247159-FH

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) and (2)(a) (use of force or coercion, causing personal injury). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve concurrent sentences of 216 to 300 months (18 to 25 years) in prison. We affirm.

## I. FACTS

On February 3, 2022, a police officer responded to a call about a distressed female, later identified as BS, in Monroe, Michigan. BS sought help from the police, reporting that she had been sexually assaulted by a man she then knew as "AJ" and later identified as defendant. BS had been staying at the home of Gina Evans in Monroe, where people congregated to use drugs. At that house, located on Conant Avenue, BS met defendant. According to BS, Evans asked BS to go with defendant to get some drugs. BS left the Conant Avenue house with defendant, and they walked to a house on Norwood Drive, where Terry Johnson lived. Calvin Johnson walked with them, but he left to go to his home before BS and defendant arrived at the Norwood Drive location.

After BS and defendant arrived at the Norwood Drive house, BS went into a back bedroom to wait for the drugs. She described defendant coming into the room and sexually assaulting her by penetrating her both vaginally and anally against her will. BS testified that she repeatedly told defendant "no."

Defendant testified at trial, and he stated that BS and Calvin had sex at the Norwood Drive house after Calvin arrived there. Defendant admitted that he also had sex with BS, but he stated

-1-

that it was consensual. Calvin testified at trial to confirm that he had sex with BS. Terry testified that he heard defendant and BS having sex in the back bedroom of the Norwood Drive house, but he stated that he did not hear any screams or yells for help.

Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. INSUFFICIENT EVIDENCE

Defendant first argues that there was insufficient evidence for the jury to convict him of both counts of CSC-I. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

A defendant does not need to take any "special steps" to preserve a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). We review de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). In determining whether the evidence was sufficient to sustain a conviction, we review the evidence in the light most favorable to the prosecution and consider whether it was sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014).

> But more importantly, the standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citations, and alteration omitted).]

## B. ANALYSIS

"The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). "Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). In determining whether the prosecution has presented sufficient evidence to sustain a conviction, we "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *Wolfe*, 440 Mich at 513-514 (quotation marks and citation omitted).

In this case, the jury was instructed on both counts, that it must find that defendant caused "personal injury to the victim and force or coercion is used to accomplish sexual penetration."

MCL 750.520b(1)(f).[1]  Within this context, "[f]orce or coercion includes, but is not limited to," the following circumstances:

>    (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

>    (*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

>    (*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat.  As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

>    (*iv*) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable.

>    (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim.  [MCL 750.520b(1)(f).]

On appeal, defendant challenges whether the evidence proved that BS was forced or coerced to engage in sex with defendant.  BS testified that defendant attacked her and sexually assaulted her in the back room of the Norwood Drive house, where she was waiting for drugs.  BS explained that defendant penetrated her vaginally and anally despite her protests.  To do so, BS testified that defendant held her down by her wrists and pinned her legs down with his knees.  Therefore, BS adequately described acts involving the use of force to accomplish sexual penetration.  See MCL 750.520b(1)(f)(*i*).

Defendant appears to claim that any evidence of force or coercion was lacking because, according to defendant, any sexual conduct was consensual.  A key part of defendant's testimony was that he appeared to describe only vaginally, not anally, penetrating BS; however, both the physical examination and the DNA results supported BS's version of events that defendant penetrated her both vaginally and anally.  If the jury found that BS's testimony was credible, it could then find that defendant used force to have sex with BS, thereby rejecting defendant's claim that it was consensual.

To the extent that defendant contends that the evidence was insufficient because there was no corroboration of BS's testimony, that argument lacks merit.  The testimony of a victim need not be corroborated in prosecutions under MCL 750.520b.  MCL 750.520h.  Therefore, the jury could find defendant guilty of CSC-I after solely considering BS's testimony.  See *People v*

---

[1] Defendant was originally charged with another aggravating factor, involving sexual conduct occurring during the perpetration of another felony, human trafficking, MCL 750.520b(1)(c).  That theory was not pursued at trial.

*Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016). Nevertheless, BS's account of the incident was corroborated by her statements to the police and the sexual assault nurse examiner (SANE). BS's statements regarding defendant's actions were generally consistent. Any inconsistencies in BS's testimony primarily had to do with her claims of being held hostage for about two weeks in the Conant Avenue house, which did not directly involve the charges in this case.

Defendant emphatically argues that BS's testimony was not credible. There was evidence that BS previously made false allegations against her husband and falsely admitted to a crime that someone else committed. BS also admitted to using drugs and prostituting herself at times. Additionally, Terry claimed that he could have heard BS scream, yell, or say "no," if she had done so. This evidence all went to BS's credibility, which was for the jury alone to weigh. See *Oros*, 502 Mich at 239. Juries see and hear witnesses and are in a much better position than appellate courts to decide the weight and credibility to be given to their testimony. *People v Bailey*, 310 Mich App 703, 714; 873 NW2d 855 (2015). "Where sufficient evidence exists, which may be believed by the jury, to sustain a verdict of guilty beyond a reasonable doubt, the decision of the jury should not be disturbed by an appellate court." *Id*. (quotation marks and citation omitted). As previously stated, BS adequately described acts involving the use of force to accomplish sexual penetration; therefore, we will not disturb the decision of the jury in this case. See *id*.

Accordingly, defendant has not shown that the evidence was insufficient for the jury to find him guilty on both counts of CSC-I.

## III. SENTENCING

Defendant further argues that he is entitled to be resentenced because his sentences: (1) are unreasonable and disproportionate, and (2) amount to cruel and/or unusual punishment. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

There is no preservation requirement when a defendant challenges the reasonableness of his sentence, but appellate courts must review all sentences for reasonableness. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023). We review a trial court's sentencing decision for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). An unreasonable sentence amounts to an abuse of discretion, and a sentence is unreasonable if the trial court failed to follow the principle of proportionality or failed to provide adequate reasons for the extent of the departure from the sentencing guidelines. *Id*.

"To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Because defendant failed to raise this argument in the trial court, it is not preserved for appeal. See *id*. "[W]e review unpreserved constitutional issues for plain error affecting substantial rights." *Id*. (quotation marks and citation omitted). "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "An error affects substantial rights when it impacts the

outcome of the lower-court proceedings." *Id*. (quotation marks and citation omitted). "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Defendant first argues that his sentence was unreasonable and disproportionate. We disagree.

To determine whether a sentence is proportionate, a trial court must consider the nature of the offense and the background of the offender. *Steanhouse*, 500 Mich at 472. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. (quotation marks and citation omitted). The trial court may consider the following nonexhaustive list of factors when determining a sentence's proportionality:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

The recommended guidelines range in this case was 126 to 262 months. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, because he had a prior conviction for second-degree murder from March 1988. The trial court noted these facts, as well as defendant's parole status at the time of this offense, in its decision. The court considered that defendant had absconded on parole three times; was apparently using drugs; and took advantage of BS, who had a drug abuse problem. The court was convinced that defendant was a danger to the community. Accordingly, the trial court found that concurrent sentences of 216 to 300 months were reasonable and proportionate.

Notably, the trial court chose a sentence that was within the recommended guidelines range. With regard to sentences that fall within the guidelines, there is a nonbinding presumption of proportionality. *Posey*, 512 Mich at 357-358. It is the defendant's burden to demonstrate that a sentence is unreasonable and disproportionate. *Id*. at 359. In order to overcome the presumption of proportionality, the defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate. *Burkett*, 337 Mich App at 637.

Although defendant claims that his sentences for CSC-I are unreasonable and disproportionate, he has not presented unusual circumstances to support his position. His only substantive argument appears to involve the sufficiency of the evidence upon which his convictions are based. As discussed previously, the evidence in this case was sufficient to support both offenses.

Considering both the facts of this offense and defendant's background, which included his status as a parolee at the time the offense was committed, the trial court's sentencing decision is not disproportionate or unreasonable. Defendant spent decades in prison for second-degree murder. Defendant's history demonstrates his unwillingness to obey the law. See *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 6 (given the defendant's history of refusing to obey the law after prior encounters with the criminal justice system, a greater punishment is reasonable). The trial court properly imposed a minimum term of 216 months for the protection of society.

Defendant will be 75 years old when he is first eligible for parole; therefore, defendant contends that this amounts to a life sentence for him. This Court recently stated that "a defendant's age is insufficient to overcome the presumption of proportionality, especially when considered in light of a defendant's criminal record and the gravity of his offenses." *Purdle*, ___ Mich App at ___; slip op at 5-6.

Defendant has not offered any unusual circumstances for this Court to conclude that his presumptively proportionate sentences are disproportionate. Accordingly, the trial court did not abuse its discretion by sentencing defendant to concurrent sentences of 216 to 300 months in prison. See *Burkett*, 337 Mich App at 642.

Defendant further argues that his sentence amounts to cruel and/or unusual punishment. We disagree.

The United States Constitution bars "cruel and unusual punishments," US Const, Am VIII, and the Michigan Constitution prohibits "cruel or unusual punishment," Const 1963, art 1, § 16. Consequently, the Michigan Constitution provides broader protection. *People v Stovall*, 510 Mich 301, 313-314; 987 NW2d 85 (2022). When analyzing whether a punishment is cruel or unusual, the following factors may be considered: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed on other criminals in the same jurisdiction, (3) the sentences imposed for commission of the same crime in other jurisdictions, and (4) whether the penalty imposed advances the goal of rehabilitation. *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992).

Defendant argues that his sentences are cruel or unusual because he will be 75 years old at the time that he is eligible for parole. Defendant does not explain how that factor fits within the test for cruel or unusual punishment. As explained previously, defendant's criminal history is poor, and his minimum sentence of 216 months is consistent with the goal of rehabilitation. Defendant has not otherwise explained why his sentences are out of line with the: (1) gravity of the offense, (1) penalties imposed on other criminals in Michigan, or (2) penalties imposed for the same offense in other states. Accordingly, defendant cannot meet his burden in proving that his sentences amount to cruel or unusual punishment under *Bullock*. Moreover, because defendant's sentences are proportionate, they are not cruel or unusual. *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief,[2] defendant further argues that he was denied the effective assistance of counsel. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it in a motion to remand, which this Court denied without prejudice.[3] See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review any factual findings for clear error, and we review de novo questions of constitutional law. *Id.* "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Abcumby-Blair*, 335 Mich App at 227-228 (quotation marks and citation omitted). Because an evidentiary hearing was not conducted on this issue, "our review is for errors apparent on the record." *Id.* at 227.

## B. ANALYSIS

To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves " 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant must also demonstrate that he was prejudiced by counsel's error. To establish prejudice, defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Leffew*, 508 Mich at 637, quoting *Strickland*, 466 US at 694. "Reasonable probability means 'a probability sufficient to undermine confidence in the outcome.' " *Leffew*, 508 Mich at 637, quoting *Strickland*, 466 US at 694.

Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). To prove that counsel's performance was deficient, "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). But, "counsel will still be found ineffective on the basis of a strategic decision if the strategy employed was not a sound or reasonable one." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

As noted, defendant moved this Court to remand this matter to the trial court for an evidentiary hearing on defendant's claims of ineffective assistance, which this Court previously

---

[2] See Administrative Order No. 2004-6, 471 Mich ci, cii, Standard 4 (2004).

[3] *People v Lane*, unpublished order of the Court of Appeals, entered August 13, 2024 (Docket No. 367584).

denied without prejudice. We have reviewed this issue on both the existing record and defendant's proposed evidence to determine if there is any possible merit to his claims that requires further development of the record. To the extent that defendant asks this Court to remand this matter for an evidentiary hearing, when this Court earlier denied his motion to remand without prejudice, we decline to order the trial court to conduct an evidentiary for the reasons discussed in this opinion. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

## 1. FAILURE TO CALL EVANS AS A WITNESS

Defendant first argues that his counsel was ineffective for not calling Evans as a defense witness. We disagree.

Defendant's witness list included Evans as a possible defense witness, and at the start of voir dire, the court included Evans on its list of possible witnesses. Because the record shows that counsel was aware that Evans might be a witness for the defense, it appears that the ultimate decision not to have her testify was a strategic one made by counsel. *Davis*, 250 Mich App at 368. Therefore, to prove that defense counsel was ineffective, defendant must show that counsel's strategic decision was not sound or reasonable. *Cline*, 276 Mich App at 637.

On appeal, defendant has produced an affidavit from Evans. Even considering Evans's affidavit, it is apparent that defendant cannot prove that his counsel's decision not to produce Evans as a witness was not sound or reasonable. In her affidavit, Evans provides a rambling account of her relationship with BS, including bringing up BS's drug use, prostitution, and history of falsely claiming she was raped. Evans discusses events that occurred with "AJ," "CJ," and Terry on February 2, 2022, which was one day before the incident in this case. Because Evans was not in the house on Norwood Drive when the assault occurred, she could not offer any testimony as an actual witness to the events that formed the basis of these offenses.

Additionally, defendant has not explained why Evans would have been a beneficial witness for his defense. Even if BS had a history of engaging in acts of prostitution for money or drugs, that does not support the defense's claim that any sexual conduct between defendant and BS was consensual, and that testimony likely would not have been admissible. See MCL 750.520j(1) (evidence of the victim's sexual conduct is generally not admissible, except under certain limited grounds).

Because there was no clear benefit or need to have Evans testify for the defense, defendant cannot prove that his counsel made an unsound or unreasonable decision not to produce Evans as a witness. Therefore, defendant has failed to prove that defense counsel's performance was deficient in this regard. See *Leffew*, 508 Mich 637.

## 2. FAILURE TO CROSS-EXAMINE THE PROSECUTION'S DNA EXPERT WITNESSES

Defendant further argues that his counsel was ineffective for not cross-examining the prosecution's expert DNA witnesses. We disagree.

At trial, the jury heard from three expert witnesses who explained the DNA evidence in this case: Jennifer Morgan, Sarah Barr, and Jennifer Jones. All three witnesses were allowed to testify as expert witnesses with no objection from the defense. Defense counsel did not pose any questions to Morgan or Jones on cross-examination; however, defense counsel did ask limited questions of Barr on cross-examination.

Defendant now argues that his counsel was ineffective for not challenging the testimony from these expert witnesses regarding the DNA evidence, confirming that defendant and BS engaged in sexual conduct. The DNA evidence showed very strong support that defendant was a contributor to the DNA profile recovered from BS's underwear and her perianal area.

Although defendant offers grounds upon which his counsel might have challenged the DNA evidence, such as the nonsexual transference of DNA[4] and possible testing errors, his arguments are premised only on speculation or conjecture. He has not offered any actual evidence that additional cross-examination by his counsel might have made a difference in how the jury's consideration of the DNA evidence. Defendant has not shown that he was prejudiced because his counsel failed to further examine these witnesses. Accordingly, he cannot prove ineffective assistance of counsel. See *id*.

Defendant also has not made an offer of proof on this issue to support his request for an evidentiary hearing. Accordingly, we decline to remand this matter for an evidentiary hearing regarding defense counsel's cross-examination of DNA expert witnesses. See *McMillan*, 213 Mich App at 141-142; *Simmons*, 140 Mich App at 685.

### 3. COUNSEL ELICITED HEARSAY EVIDENCE

Defendant further argues that defense counsel was ineffective for asking Corporal Bruce Timmins of the Monroe City Police Department to describe in detail what BS reported occurred during the incident because such testimony involved hearsay.[5] We disagree.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In general, hearsay must fall under one of the exceptions in the Michigan Rules of Evidence to be admissible. MRE 802.[6]

---

[4] Notably, defendant testified that he had consensual vaginal sex with BS.

[5] Defendant also argues that this testimony was not relevant and was unfairly prejudicial under MRE 401 and MRE 403, but BS's statements to police were relevant because they went to the credibility of her testimony. Defendant cannot show how it was unfairly prejudicial for the jury to consider this testimony.

[6] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the versions of MRE 801 and MRE 802 in effect at the time of this trial. The changes made to both MRE 801 and MRE 802 are generally stylistic only.

When defense counsel cross-examined Corporal Timmins in this case, he asked Corporal Timmins whether BS identified the person who had assaulted her, and Corporal Timmins responded that BS identified the person as "AJ or Unk." At one point during Corporal Timmons cross-examination, the prosecutor objected to the defense's line of questioning on the basis of hearsay. The following exchange was made:

[*Defense Counsel*]: Did she mention having sex with anyone other than Mr. Lane or Unk that evening?

[*Prosecutor*]: Judge, I'm going to object. There's a lot of hearsay coming in here.

[*Trial Court*]: Response?

[*Defense Counsel*]: I think that's definitely not hearsay if she mentioned it to Officer Timmins.

[*Trial Court*]: Well, would the lawyers approach?

\* \* \*

[*Trial Court*]: Objection is sustained.

The trial court sustained the prosecutor's objection on the ground that defense counsel was asking questions that elicited hearsay responses, and it appears that defense counsel had no valid argument for why the responses fell under an exception to the hearsay rule. Nevertheless, defense counsel continued to question Corporal Timmins as follows:

[*Defense Counsel*]: Did [BS] provide any reason as to why she left the Conant Street address?

[*Corporal Timmins*]: Why she had left?

[*Defense Counsel*]: Correct.

[*Corporal Timmins*]: She was—from what she told me is she was being held against her will on Conant Street.

[*Defense Counsel*]: Okay, and that was prior to the assault though?

[*Corporal Timmins*]: Yes.

[*Defense Counsel*]: So, she was—her testimony or she basically said she was being held against her will, she escaped after being assaulted by those four individuals we discussed earlier, right?

[*Corporal Timmins*]: Yes, sir.

* * *

> [*Defense Counsel*]: Okay. When you were discussing events with [BS], did she describe the sexual assault in any way?
>
> [*Corporal Timmins*]: She did.
>
> [*Defense Counsel*]: What exactly did she say?
>
> [*Corporal Timmins*]: She said that the intercourse started with missionary position. She told Unk or AJ to stop at which time he rolled her over and continued to have sex with her, penis vagina, and then proceeded to insert his finger into her anus multiple times. She told him to stop and was crying and continued beyond that point and inserted his penis into her anus and continued.
>
> [*Defense Counsel*]: She indicated though she cried out, I believe, seven to ten times, right?
>
> [*Corporal Timmins*]: Yes, sir.
>
> [*Defense Counsel*]: Okay. Did she mention if anyone else was in the Norwood house when this happened?
>
> [*Corporal Timmins*]: At the time, Terry Johnson was in the residence.

Defense counsel also asked about the back bedroom where the assault occurred, to clarify whether Terry could have heard BS crying out.

Even if defendant is correct that his counsel solicited hearsay from Corporal Timmins, defendant has not explained how this prejudiced his defense. It appears that defense counsel was trying to bring up possible inconsistencies in BS's statement and also show that if she had protested during the assault, Terry would have heard her because the house did not have a door separating the back bedroom from the living room where Terry was located. It is important to note that, through this line of questioning, Corporal Timmins brought up that BS may have said that she "cried" out, not just told defendant "no." That might have given defendant a basis for arguing that: (1) BS's testimony, that she did not yell or scream, was not credible; and (2) Terry's testimony, that he did not hear BS protesting, was credible.

Defendant has not shown that his counsel's line of questioning affected the outcome of the trial. *Leffew*, 508 Mich at 637. Simply because it involved hearsay does not prove that defendant was prejudiced. Notably, Corporal Timmins's testimony was cumulative to BS's testimony and the SANE's testimony. Accordingly, defendant cannot prove ineffective assistance of counsel. See *id*.

Defendant also has not made an offer of proof on this issue to support his request for an evidentiary hearing. Accordingly, we decline to remand this matter for an evidentiary hearing regarding defense counsel's cross-examination of Corporal Timmins. See *McMillan*, 213 Mich App at 141-142; *Simmons*, 140 Mich App at 685.

-11-

## 4. COUNSEL FAILED TO IMPEACH BS

Defendant further argues that his counsel was ineffective for failing to impeach BS's testimony with police-report information. We disagree.

Defendant argues that his counsel failed to investigate the police reports regarding this incident because the reports contained statements made by BS that could have impeached BS's testimony. Defendant provides statements made by BS that were in the police reports; however, defendant does not offer any support for the claim that defense counsel did not conduct a proper investigation. The defense made requests for discovery in this case; therefore, there is no reason to believe that defense counsel did not have all necessary discovery to prepare for trial. During defense counsel's cross-examination of BS, he covered what BS told the police, among other details of her testimony and her background. Accordingly, defendant's argument that defense counsel failed to impeach BS's testimony lacks merit, and defendant has not shown that defense counsel was ineffective in this regard. See *Leffew*, 508 Mich at 637.

Defendant also has not made an offer of proof on this issue to support his request for an evidentiary hearing. Accordingly, we decline to remand this matter for an evidentiary hearing regarding defense counsel's investigation of this case or impeachment of BS. See *McMillan*, 213 Mich App at 141-142; *Simmons*, 140 Mich App at 685.

## 5. CUMULATIVE ERROR

Defendant further argues that the cumulative effect of these alleged errors requires reversal. We disagree.

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Lowrey*, 342 Mich App 99, 119; 993 NW2d 62 (2022) (quotation marks and citation omitted). "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Because we have concluded that defense counsel exercised reasonable trial strategy and no errors occurred, there is no cumulative error requiring reversal. See *id*.

## V. EX PARTE COMMUNICATIONS WITH THE JURY

In his Standard 4 brief, defendant further argues that the trial court's ex parte communications with the jury require a new trial. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because the trial court responded to the jury's questions without the parties present, defendant could not make a simultaneous objection to the trial court's responses; however, defendant could have raised this issue in a motion for a new trial after he learned of the court's communications with the jury. See MCR 6.431(B). Defendant failed to move for a new trial on this ground; therefore, this issue is not preserved, and we review it for plain error. See *Burkett*, 337 Mich App at 635.

-12-

B. ANALYSIS

Shortly before the jury reached a verdict, the trial court acknowledged that it had handled an inquiry from the jury when the attorneys and defendant were not present. The trial court stated as follows: "All right. I got a second note that I took care of myself. It says on the verdict form, it says pick one or the other. What do we do if we can't agree? My response was the verdict must be unanimous on each count." It is unclear if defense counsel was present at the time the court made this statement, but the prosecutor was present and defense counsel appeared on the record shortly thereafter. There was no objection to the court's statement on the record. The lower court record also contains copies of four additional requests from the jury and the trial court's responses to those requests in writing.

MCR 2.513(B) [formerly MCR 6.414(A)] provides that a court may not communicate with the jury or any juror pertaining to the case being heard without notifying the parties and allowing them to be present. In *People v France*, 436 Mich 138, 142-144; 461 NW2d 621 (1990), the Michigan Supreme Court addressed when a trial judge's ex parte communications with a jury warrants reversal. The Michigan Supreme Court modified the former rule of automatic reversal, and explained that "[t]he linchpin of the new rule centers on a showing of prejudice. For purposes of this rule, we broadly define prejudice as 'any reasonable possibility of prejudice.' " *Id*. at 142. The Court offered the following guidance on how to determine possible prejudice;

> We find that communication with a deliberating jury can be classified into one of three categories: substantive, administrative, or housekeeping. Upon appeal, it is incumbent upon a reviewing court to first categorize the communication that is the basis of the appeal. This will necessarily lead to the determination of whether a party has demonstrated that the communication was prejudicial, or that the communication lacked any reasonable prejudicial effect.

> Substantive communication encompasses supplemental instructions on the law given by the trial court to a deliberating jury. A substantive communication carries a *presumption* of prejudice in favor of the aggrieved party regardless of whether an objection is raised. The presumption may only be rebutted by a firm and definite showing of an *absence* of prejudice.

> Administrative communications include instructions regarding the availability of certain pieces of evidence and instructions that encourage a jury to continue its deliberations. An administrative communication carries no presumption. The failure to object when made aware of the communication will be taken as evidence that the administrative instruction was not prejudicial. Upon an objection, the burden of persuasion lies with the nonobjecting party to demonstrate that the communication lacked any prejudicial effect. Alternatively, a reviewing court, upon its own volition, may find that an instruction which encourages a jury to continue its deliberations was prejudicial to the defendant because it violated the ABA Standard Jury Instruction 5.4(b), as adopted by this Court in *People v Sullivan*, 392 Mich 324[;] 220 NW2d 441 (1974).

-13-

Housekeeping communications are those which occur between a jury and a court officer regarding meal orders, rest room facilities, or matters consistent with general "housekeeping" needs that are unrelated in any way to the case being decided. A housekeeping communication carries the presumption of no prejudice. First, there must be an objection to the communication, and then the aggrieved party must make a firm and definite showing which effectively rebuts the presumption of no prejudice. [*Id*. at 142-144 (footnotes omitted).]

With regard to the jury's question about agreeance on a verdict and the court's response that any verdict must be unanimous, defendant correctly classifies this communication as a supplemental instruction; therefore, it is treated as a substantive communication. See *Id*. at 163 ("Substantive communication encompasses supplemental instructions on the law given by the trial court to a deliberating jury."). As a result, there is a presumption of prejudice in favor of defendant, regardless of whether there was an objection made. *Id*. "The presumption may only be rebutted by a firm and definite showing of an *absence* of prejudice." *Id*. In *France*, 436 Mich at 163 n 34, the Court explained that the presumption may be rebutted by "a showing that the instruction was merely a recitation of an instruction originally given without objection, and that it was placed on the record." In this case, the trial court had already instructed the jury that it was required to reach a unanimous verdict, and defendant had not objected to that instruction. Accordingly, defendant cannot show prejudice regarding the trial court's reiteration of this instruction. See *id*.

The jury also asked if BS had testified that she had sex with Calvin at the Norwood Drive house. The court responded, by writing on the note, "No." This communication appears to fall into the category of a substantive communication, as defendant claims. As a result, there is a presumption of prejudice in favor of defendant, regardless of whether there was an objection made. *Id*. at 163. Defendant may have had a valid objection to the trial court's response because he may have wanted BS's testimony read back to the jury, instead of having the jury hear BS's testimony through the trial court's mouth. Nevertheless, defendant cannot show prejudice from the trial court's response to the jury's note because if BS's testimony was reread to the jury, it would have concluded, consistent with the trial court's response, that BS never said that she had sex with Calvin in the Norwood Drive house. As defendant points out, it was defendant, Calvin, and Terry who testified that BS had sex with Calvin. Accordingly, defendant cannot show prejudice regarding this communication. See *id*.

The jury also asked the trial court whether BS had been in rehab or was free of drugs, and the trial court responded, by writing on the note, "NOT Relevant." This communication appears to be administrative in nature because it regarded the availability of certain pieces of evidence and encouraged the jury to continue its deliberations. See *id*. "An administrative communication has no presumption of prejudice." *Id*. The trial court was correct that whether BS was drug free was irrelevant to this case. To the extent that the jury could consider BS's drug use at the time of trial as it impacted her ability to recall facts, that was to be decided on the basis of evaluating her testimony. Accordingly, defendant cannot show prejudice regarding this communication. See *id*.

The jury also requested a 2022 calendar and a highlighter, which the trial court appears to have provided. These requests were administrative or housekeeping in nature; therefore, there is no presumption of prejudice. *Id*. at 163-164. Defendant has not established how he was prejudiced by the court's approval of a calendar or a highlighter. See *id*.

Because defendant has failed to show a reasonable possibility that prejudice occurred by the trial court's ex parte communications with the jury in this case, reversal is not warranted. *Id*. at 142.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney